STATE of Iowa, Appellee,

v.

**Jerry Lee BILLINGS, Appellant.**

No. 58384.

Supreme Court of Iowa.

May 19, 1976.

Dale A. Johnson, Fort Dodge, for appellant.

Richard C. Turner, Atty. Gen., James Robbins and Thomas Mann, Jr., Asst. Attys.

Gen., and William J. Thatcher, County Atty., for appellee.

McCORMICK, Justice.

Defendant appeals his conviction and sentence for burglary without aggravation in violation § 708.3, The Code. He contends the trial court erred (1) in overruling his pretrial motion to suppress evidence, (2) in allowing a witness to express an opinion on an issue of law, (3) in providing the jury an incorrect definition of nighttime, and (4) in refusing to instruct on breaking and entering as a lesser included offense. We reverse and remand because we find merit in his third and fourth contentions.

The charge was based on the alleged burglary of the Kipton Prendergast farm home in Webster County in the evening of January 29, 1975. The State produced sufficient evidence to send the case to the jury against defendant.

Prendergast testified he left home to drive to Fort Dodge at about 6:00 p. m. He locked the doors of the home. He said the sun had set and it was dusk but not dark. He did not remember whether he used his automobile headlights while driving to the city. When he returned home about 9:00 p. m. he found the front door open and his stereo equipment and TV missing. He reported the theft to the Webster County sheriff's office and provided that office with the serial numbers of his equipment.

Michael Bradwell, an alleged accomplice of defendant, testified he and defendant drove to the Prendergast home that evening for the purpose of breaking in to steal Prendergast's stereo equipment. He said Prendergast passed them on his way to Fort Dodge. He said they forced the front door open, took the equipment, and put it in defendant's automobile. He estimated the time of the theft as 7:30 or 8:00 p. m. He said they were able to see the equipment without turning lights on in the house. Although the yard light was on, he said he would have been able to see well enough outside without it to recognize a person with whom he was acquainted. Bradwell

testified they drove to Des Moines where they planned to sell the equipment to a friend of his. He called his friend from the downtown Holiday Inn in Des Moines. They were stopped near there by police who though they had seen defendant drinking a can of beer. When the police inquired about the stereo equipment in the car, defendant said it was his. With defendant's help they recorded the serial numbers of the equipment. Then the police said Bradwell and defendant could go. Bradwell said he and defendant later sold the equipment to his friend for $350 and split the proceeds.

Ned Osborn, a Des Moines police officer, testified he and another officer observed defendant and Bradwell in defendant's car at about 10:00 p. m. on the day involved pulling out of the downtown Holiday Inn parking lot. Osborn saw defendant drinking from a can the officer believed contained beer. He said he directed Morris to follow and stop the car because of the apparent violation of § 123.46, The Code, proscribing consumption of alcoholic beverages on a public highway. When they stopped defendant's car, Osborn checked his driver's license. He also saw some of the stereo equipment in the back seat. Defendant got out of the car. In doing so, according to Osborn, he attempted to hide the beer can under the seat and it spilled. Defendant first denied but then admitted he had the beer. The officer confirmed Bradwell's testimony about subsequent events. He testified defendant gave him permission to search the car, including the trunk. He also testified he warned defendant about the beer violation but did not then charge him with that or any other offense.

Through the testimony of other witnesses, the State showed the Des Moines police contacted the Webster County sheriff's office the next morning and inquired whether that office had received a report regarding stolen stereo equipment. The sheriff's office sent the serial numbers of the Prendergast equipment to the Des Moines police, and it was determined the numbers matched those recorded by officer Osborn. The equipment was later recovered, and

defendant and Bradwell were charged with burglary.

Defendant now appeals his subsequent conviction and sentence.

I. *The motion to suppress.* Defendant moved before trial to suppress evidence of the search of his automobile in Des Moines. After hearing, the trial court overruled the motion, and defendant assigns this ruling as error.

■ Under principles explained in *State v. Cooley,* 229 N.W.2d 755, 760 (Iowa 1975), the officers were justified in making an investigatory stop of defendant's vehicle because they had specific and articulable cause to believe defendant was consuming beer on a public highway in violation of § 123.46, The Code. Having lawfully stopped the vehicle, they were in a place they had a right to be when they observed the stereo equipment in plain view in the back seat. The ensuing search was with defendant's consent, and its fruits were admissible. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Knutson,* 234 N.W.2d 105, 107 (Iowa 1975).

The trial court did not err in overruling defendant's motion to suppress.

II. *The evidentiary ruling.* During the course of direct examination, the alleged accomplice Bradwell estimated the time of the offense as 7:30 or 8:00 p. m. The prosecutor then asked, "And it was night at 7:30 or 8:00 on a winter night, is—?" Defense counsel objected that the definition of night is a legal one and the witness was not shown to know it. The court overruled the objection, and Bradwell answered, "Yes, it was night".

■ Proof the offense occurred "in the nighttime" is an element of burglary. § 708.1, The Code; *State v. Osborn,* 200 N.W.2d 798, 807 (Iowa 1972). The term has a definite legal meaning as an element of burglary, explained in *Osborn* and discussed further in Division III *infra.* In view of the specialized legal meaning of the term as used in the definition of burglary, Bradwell was called upon to express an opinion on a question of mixed law and fact. The subject matter was inappropriate in this context for opinion testimony. *Grismore v. Consolidated Products Co.,* 232 Iowa 328, 361, 5 N.W.2d 646, 663 (1942); see *State v. Oppedal,* 232 N.W.2d 517, 524 (Iowa 1975); *State v. Johnson,* 224 N.W.2d 617, 622 (Iowa 1974); *Hegtvedt v. Prybil,* 223 N.W.2d 186, 190 (Iowa 1974).

The State argues defendant's objection to the question was not sufficient to alert the trial court to his present theory that the question called for Bradwell to express an opinion on a subject not proper for opinion testimony because involving an issue of law. Because this case is reversed and remanded on defendant's remaining two assignments of error, we do not reach that issue. We assume the situation will not recur on retrial.

III. *The trial court's definition of nighttime.* Over defense counsel's timely and adequate exception, the trial court instructed the jury that "nighttime", as an element in a burglary charge, "is defined as the period between sunset and sunrise". Defendant assigns the court's overruling of his exception as error.

■ In *State v. Osborn,* supra, at 807, we held nighttime in a charge of burglary under § 708.1, The Code, is, as it was at common law, a period between sunset and sunrise during which there is not daylight enough by which to discern a man's face. Authorities in support of this definition are listed in the majority and dissenting opinions in *Osborn.*

Recognizing that the definition given by the trial court was broader, the State urges us to abandon the common-law definition and adopt the one given by the trial court. We decline to do so. We believe the legislature intended the term to have its common-law meaning in § 708.1. At common law, the circumstance of aggravation signified by the "nighttime" factor was not sunset but the concealment afforded by darkness, and the common-law definition gives effect to that distinction. *Bowser v. State,* 136 Md. 342, 110 A. 854 (1920).

A question of fact for the jury existed regarding whether the State proved the "nighttime" element of the offense under its proper definition.

■ The trial court's erroneous definition of nighttime was reversible error.

IV. *The lesser included offense issue.* Despite timely and adequate objection by the defense, the trial court refused to submit breaking and entering a dwelling house under § 708.8 as a lesser included offense for jury consideration. Defendant assigns this refusal as error.

Authority for submission of lesser offenses is found in two Code sections. The first is § 785.5 which provides:

"Upon an indictment for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment, and guilty of any degree inferior thereto, or of an attempt to commit the offense, if punishable by indictment."

The second is § 785.6 which provides:

"In all other cases, the defendant may be found guilty of any offense the commission of which is necessarily included in that with which he is charged in the indictment."

These provisions have been part of the Code since 1851.

Burglary, the offense charged here, is defined in § 708.1, The Code, as follows:

"If any person break and enter any dwelling house in the nighttime, with intent to commit any public offense; or, after having entered with such intent, break any such dwelling house in the nighttime, he shall be guilty of burglary, * * *."

Breaking and entering a dwelling house, the offense alleged by defendant to be a lesser included offense of burglary, is provided for in § 708.8, The Code, as follows:

"If any person, with intent to commit any public offense, in the daytime break and enter, or in the nighttime enter without breaking, any dwelling house; * * he shall be imprisoned * * *."

These provisions have also been part of the Code since 1851.

■ When first confronted with an issue regarding the relationship of §§ 708.1 and 708.8, this court held these provisions defined two degrees of burglary, "the first, the breaking and entering night-time, with the intent to commit a felony; the second, the breaking and entering in the day-time." *State v. Frahm*, 73 Iowa 355, 35 N.W. 451 (1887). When later faced with a challenge to a court instruction permitting a jury to find a defendant guilty of the offense defined in § 708.8 if the jury found a failure of State proof on the "nighttime" element of a burglary charge, the court held:

"It is said that the giving of this instruction is erroneous, because the defendant is not charged with such a crime, and there is no evidence to sustain it. In *State v. Frahm*, 73 Iowa 355, 35 N.W. 451, this court held that 'burglary of a dwelling house is of two degrees,—the first, the breaking and entering in the nighttime with intent to commit a felony; the second, the breaking and entering in the daytime.' Code, § 4465, is as follows: 'Upon an indictment for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment, and guilty of any degree inferior thereto, or of an attempt to commit the offense, if punishable by indictment.' The statute is authority for the instruction. Breaking and entering in the daytime is a degree of the offense charged. As to there being no evidence of such an offense, we need only say there is testimony on which the jury found that there was a breaking and entering at some time, with the felonious intent necessary to constitute burglary. This breaking and entering must have been either in the nighttime or in the daytime. If the evidence did not, with that degree of certainty necessary to convict, show the offense to be of the highest degree, it was the duty of the jury, under a familiar rule, to find it of the lower degree; and hence, if there was evidence to convict of burglary,—which will be noticed hereafter,—it is certainly

sufficient to sustain a verdict for the lower degree." *State v. Jordan,* 87 Iowa 86, 89, 54 N.W. 63, 64 (1893).

Whether the offense of breaking and entering a dwelling house defined in § 708.8 is viewed as a lesser degree of burglary as in *Frahm* and *Jordan* or as a lesser included offense, the result would be the same. In either event, in a trial for burglary when an issue existed for the jury on the "nighttime" element, the lesser offense of breaking and entering a dwelling house under § 708.8 would also be submitted for jury consideration. Because we hold breaking and entering a dwelling house under § 708.8 is a lesser included offense of burglary, we have no occasion to reexamine the *Frahm* and *Jordan* holdings that breaking and entering a dwelling house in the daytime is a lesser degree of burglary.

The State contends the breaking and entering offense cannot be a lesser included offense of burglary because its elements are not included in burglary. Specifically it argues "daytime" is an element of the breaking and entering offense not included in the elements of burglary.

The principle involved in determining when an offense is necessarily included in another within the meaning of § 785.6 was explained in *State v. Marshall,* 206 Iowa 373, 375, 220 N.W. 106 (1928), as follows:

> "Every crime charged consists of certain specific elements, and if, from the elements of the crime charged, certain elements thereof may be taken, thereby leaving the necessary elements of another crime, the latter would be an included offense. Or, to state it in another way, if certain elements are necessary to a criminal charge, and these elements, plus certain other elements, make the necessary elements of a higher crime, then the lower crime is included in the higher one."

Of course, a lesser included offense is not submitted unless the evidence justifies it in the particular case. *State v. Smith,* 223 N.W.2d 223, 225 (Iowa 1974), and citations.

Obviously, if use of the term "in the daytime" in § 708.8 makes "daytime" an element of the offense of breaking and entering a dwelling house, that offense is not necessarily included in a burglary charge. Nighttime and daytime are mutually exclusive terms; nighttime does not include daytime; daytime is not included in the elements of burglary.

Whether daytime is an element of the offense of breaking and entering a dwelling house under § 708.8 presents a problem of statutory interpretation and construction.

Several familiar principles are particularly applicable here. We have repeatedly said that in interpreting and construing statutes, we consider related provisions together and attempt to harmonize them if possible. In searching for legislative intent, we consider the object sought to be accomplished and the evil sought to be remedied. We seek a reasonable interpretation and construction which will best effect the purpose of the provisions and avoid absurd results. The manifest intent of the legislature will prevail over the literal import of the words used. *State v. Buckley,* 232 N.W.2d 266, 270 (Iowa 1975); *State v. Prybil,* 211 N.W.2d 308, 311 (Iowa 1973).

In *State v. Jordan,* supra, this court approved an instruction which not only submitted breaking and entering as a degree of burglary but informed the jury that if the State proved all of the elements of burglary except the element of nighttime the defendant would be guilty of the offense of breaking and entering in the daytime. The court did not require the State to prove "daytime" as an element of the lesser offense. Cf. *State v. Osborn,* 200 N.W.2d 798, 807 (Iowa 1972). The clear implication of the *Jordan* holding is that "daytime" is not an element of the offense under § 708.8.

At common law, "nighttime" was an essential element of burglary. Legislatures frequently created a statutory burglary offense, including the nighttime element. Nighttime was a circumstance of aggravation; it made the offense more serious than if it did not occur during nighttime. *Bowser v. State,* 136 Md. 342, 110 A. 854 (1920); *Schwabacher v. People,* 165 Ill. 618, 46 N.E.

809 (1897). In order to criminalize the same conduct when nighttime could not be proven, legislatures enacted statutes proscribing daytime breaking and entering of dwelling houses.

These statutes were intended to fill a gap in the law when the nighttime element of burglary could not be proven. If their use of the language "in the daytime", as in § 708.8, were held to establish an element in the lesser crime, the State would be cast in the strange position of having the affirmative burden to prove a circumstance of non-aggravation in order to establish the charge. Such a literal construction would also defeat an essential part of the legislative purpose in enacting the statute. It would have the absurd result of leaving a "no man's land" where a state of equal balance in the proof between the greater and lesser elements would render conviction of either crime beyond a reasonable doubt impossible. In addition, it would make it impossible for the State to prove either crime, no matter how strong the proof of all other elements, without proving the time of day it occurred. On a burglary charge, failure to prove nighttime would require acquittal. On a breaking and entering charge, failure to prove daytime would require acquittal. This would be true even though the State is not require to prove the time of a break-in of any other place mentioned in § 708.8.

Moreover, the same literalism which would make daytime an element of the offense would make proof of no breaking an element of nighttime entering "without breaking" in the same provision. Yet, we have held that charge is a lesser included offense of burglary. *State v. Maxwell,* 42 Iowa 208 (1875). We have done so because we recognize "without breaking" is not an element of that offense; it is merely descriptive.

Viewed conceptually, as it should be, the expression "in the daytime" in § 708.8 is also used descriptively. It distinguishes breaking and entering a dwelling house from burglary and from the offense of nighttime entering without breaking.

One court has called elevation of such descriptive language into an element of an offense a "semantic trap", adding:

"The relationship between common law burglary and daytime housebreaking provides a perfect example of such semantic difficulty. Daytime housebreaking statutes were devised to fill the gap in the law where the 'nighttime' element of burglary was either non-existent or could not be shown. In the remedial statutes however, did the use of the word 'daytime' contemplate an alternative element which must, as any other element of the crime, be affirmatively shown? or did 'daytime' mean simply 'anything less than demonstrated nighttime?' Georgia became mired in literalism and reversed a conviction for daytime housebreaking because the evidence did not show clearly that the offense occurred 'in the daytime.' In *Jones v. State,* 63 Ga. 141 (1879), it was held, 'To prove a burglary was committed in the day or in the night, one or the other, is certainly not to prove beyond a reasonable doubt that burglary in the daytime was committed.'

"This Court, however, in line with more enlightened thought, set its face against such an absurdity [by adopting holdings (citations omitted)] * * * to the effect that 'burglary in the second degree was not a different offense from common law burglary but was merely a lesser degree of the same offense' and that 'when the proof fails to show the time of the offense then the burglar may be punished under the statute providing the lesser penalty.' Absent such better conceptualization, a bonanza would have been created for some clever 'twilight burglar' or for one who simply broke and entered at some undesignated time within a 24-hour period, whereby he could not be shown beyond a reasonable doubt to have perpetrated either of two mutually exclusive, alternative offenses, notwithstanding that he unquestionably committed one or the other of them." *Henry v. State,* 20 Md.App. 296, 302–303, 315 A.2d 797, 801 (1974).

Under a statutory scheme like ours, the Maryland court had earlier said, "We think that the time of the offense, 'in the daytime', is not an essential element of the crime, and is not used in the statute to define or characterize the offense, but merely to distinguish it from burglary which must be committed in the nighttime." *Reagan v. State,* 4 Md.App. 590, 595, 244 A.2d 623, 626 (1968).

A majority of jurisdictions which have faced the issue have reached the same conclusion.

In *State v. Neddo,* 92 Me. 71, 42 A. 253 (1898), the Maine court interpreted a statute very much like our § 708.8. The court held nighttime was a circumstance of aggravation which needed to be proven when breaking could not be shown but that it was not necessary to establish the time of the offense when breaking could be shown.

In *State v. Newell,* 93 Vt. 81, 82, 106 A. 561 (1919), under Vermont statutes making burglary "in the nighttime" more serious than burglary "in the daytime", the court held daytime was not an element of the lesser crime:

> "The effect of the sections referred to is, not to make two crimes, but to make two grades of the same crime. The words 'in the daytime' are not used * * * to define or characterize the offense, but merely to distinguish it from the higher grade of the same offense * * *."

See Vermont Stat.Ann.T. 13 §§ 1201, 1202.

The same principle has been applied in Idaho where burglary is of the first degree if it occurs "in the nighttime" and of the second degree if it is committed "in the daytime". *State v. Eubanks,* 77 Idaho 439, 294 P.2d 273 (1956); see 4 Idaho Code § 18–1402. It has also been applied in Tennessee where burglary which occurs "by night" is punished more severely than burglary which occurs "by day". *Ledger v. State,* 199 Tenn. 155, 285 S.W.2d 130 (1955); see 7 Tenn. Code Ann. §§ 39–901, 39–903.

A recent case which reaches a contrary result is clearly distinguishable. In *State v. Briggs,* 161 Conn. 283, 287 A.2d 369 (1971), the Connecticut court relied on legislative history in finding daytime to be an element of daytime breaking and entering of a dwelling under a statute enacted there in 1902. Separate 1902 statutes proscribed nighttime breaking and entering and daytime breaking and entering of other places. A 1902 "proof statute" provided that a person prosecuted for nighttime breaking and entering could be convicted of daytime breaking and entering if the jury were uncertain whether the act took place at night or in the daytime. In 1949 the Connecticut legislature merged the nondwelling and breaking and entering offenses, eliminating the need to prove time. The legislature simultaneously repealed the "proof statute". The 1902 statute proscribing daytime breaking and entering of a dwelling was left intact. The *Briggs* court held the repeal of the "proof statute" showed the legislature never intended it to apply to daytime breaking and entering of a dwelling. Therefore, the court concluded, the legislature must have intended "daytime" to be an element of that offense. We have no such legislative history. In fact, the principle adopted by this court in *State v. Jordan,* supra, is the same as existed in the Connecticut "proof statute". The *Briggs* holding has no application here.

■ We conclude the language "in the daytime" in § 708.8 does not make daytime an element of breaking and entering a dwelling house under that provision. The language is used descriptively to contrast that offense with burglary under § 708.1 and the offense of entering a dwelling house in the nighttime without breaking under § 708.8. As a result, we hold breaking and entering a dwelling house under § 708.8 is a necessarily included offense of burglary.

■ Since the State's proof of the nighttime element of burglary presented a question for the jury in this case, the trial court committed reversible error in refusing to submit the lesser included offense here.

REVERSED AND REMANDED.

All Justices concur except MOORE, C. J., and LeGRAND, REES, and REYNOLDSON, JJ., who dissent.

MOORE, Chief Justice (dissenting).

I concur in the first three divisions of the majority opinion and the result but disagree with and dissent from the holding in division IV.

Our earlier cases created a need for definite holdings clarifying the rule to be followed by the bench and bar in determining what should be submitted to the jury as an included offense. Our recent holdings clearly establish the applicable rules.

In *State v. Smith*, Iowa, 223 N.W.2d 223, 225, we state:

"With regard to that statutory enactment (section 785.6) two steps are involved in determining whether one offense is necessarily included within another. The first focuses upon the legal or element test, and the second requires an ad hoc factual determination. As to the former, a lesser offense must be composed of some but not all elements of the greater crime yet cannot require an element not needed to constitute the greater offense. See *State v. Grady*, 215 N.W.2d 213, 214 (Iowa 1974); *Everett v. Brewer*, 215 N.W.2d 244, 246 (Iowa 1974); *State v. Hawkins*, 203 N.W.2d 555, 557 (Iowa 1973)."

And in *State v. Stewart*, Iowa, 223 N.W.2d 250, filed simultaneously in November 1974 with *State v. Smith*, supra, at pages 251, 252, we say:

"In a number of recent cases we have dealt with lesser included offenses. *State v. Hawkins*, 203 N.W.2d 555 (Iowa 1973); *State v. Habhab*, 209 N.W.2d 73 (Iowa 1973); *Everett v. Brewer*, 215 N.W.2d 244 (Iowa 1974). There are two steps in determining whether one offense is included within another. The first is a consideration of the elements. The lesser offense must be composed solely of some but not all elements of the greater crime. *The lesser crime must not require any additional element which is not needed to constitute the greater crime.* * * *." (Emphasis added).

In *State v. Habhab*, supra, Iowa, 209 N.W.2d 73, 75, we say:

"* * *. Under *State v. Hawkins* it is quite possible to commit one crime in the act of committing another and yet not have it an included offense. *It is not included if its elements are not entirely included as a part of the elements of the major offense.*" (Emphasis added).

The holding in division IV does violence to the above now well established principles: first by making breaking and entering as defined in Code section 708.8 a degree of burglary as defined in section 708.1; secondly by ignoring the undisputed fact that section 708.1 does not include the element "in the daytime"; and thirdly by removing the clearly stated element of "in the daytime" from section 708.8.

All crimes in Iowa are statutory. The provisions of *our* statutes are therefore controlling. The following are pertinent here:

"708.1 Definition—punishment. If any person break and enter any dwelling house *in the nighttime*, with intent to commit any public offense; or, after having entered with such intent, break any such dwelling house *in the nighttime*, he shall be guilty of burglary, and shall be punished according to the aggravation of the offense, as is provided in sections 708.2 and 708.3." (Emphasis added).

"708.2 Aggravated offense. If such offender, at the time of committing such burglary, is armed with a dangerous weapon, or so arm himself after having entered such dwelling house, or actually assault any person being lawfully therein, or has any confederate present aiding and abetting in such burglary, he shall be imprisoned in the penitentiary for life or any term of years."

"708.3 Burglary without aggravation. If such offender commit such burglary otherwise than is mentioned in section 708.2, he shall be imprisoned in the penitentiary not exceeding twenty years."

"708.4 Burglary by means of explosives. Any person who, with intent to

commit crime, breaks and enters, *either by day or by night,* any building, whether inhabited or not, and opens or attempts to open any vault, safe, or other secure place by use of nitroglycerin, dynamite, giant powder, gunpowder, or any other explosive material, shall be deemed guilty of burglary with explosives." (Emphasis added).

"708.5 Burglary by means of electricity. Any person who, with intent to commit crime, breaks and enters, *either by day or night,* any building, whether inhabited or not, and opens or attempts to open any vault, safe, or other secure place by the use of electricity as a motive or burning or melting power or agency, or in any form, or by any electrical means whatsoever, or by the use of acetylene gas, or by oxyacetylene gas, or by any gas in any form whatsoever, shall be deemed guilty of burglary with electricity or gas, as the case may be." (Emphasis added).

"708.6 Punishment. Any person duly convicted of burglary under the terms of sections 708.4 and 708.5 shall be imprisoned in the penitentiary not more than forty years."

"708.7 Possession of burglar's tools— evidence. If any person be found having in his possession *at any time* any burglar's tools or implements, with intent to commit the crime of burglary, he shall be imprisoned in the penitentiary not more than fifteen years, or be fined not exceeding one thousand dollars. The court before whom such conviction is had shall order the retention by the sheriff of such tools or implements, to be used in evidence in any court in which such person is tried for the offense herein defined, or that of burglary, and the possession of such tools or implements shall be presumptive evidence of his intent to commit burglary." (Emphasis added).

"708.8 Other breakings and enterings. If any person, with intent to commit any public offense, *in the daytime* break and enter, *or in the nighttime* enter without breaking, any dwelling house; or *at any time* break and enter any office, shop, store, warehouse, railroad car, boat, or vessel, or any building in which any goods, merchandise, or valuable things are kept for use, sale, or deposit, he shall be imprisoned in the penitentiary not more than ten years, or be fined not exceeding one hundred dollars and imprisoned in the county jail not more than one year." (Emphasis added).

I. The degrees of burglary are clearly defined by legislative enactment as "aggravated offense", section 708.2 and "burglary without aggravation", section 708.3. *State v. Frahm,* 73 Iowa 355, 35 N.W. 451 (1887) and *State v. Jordan,* 87 Iowa 86, 54 N.W. 63 (1893) read out these provisions and decide "Breaking and entering in the daytime" is a degree of the offense charged. Each recognize "in the daytime" is an element of breaking and entering a dwelling.

Both *Frahm* and *Jordan* are in conflict with the definite legal principles established in *State v. Smith,* supra, *State v. Stewart,* supra, and *State v. Habhab,* supra. They should be specifically overruled.

II. Somehow the majority, for the first time since the statute first appeared in the 1851 Code, finds and holds the clear and unambiguous words "in the daytime" used in the first part of section 708.8, do not establish an element of "other breakings and enterings" but are only descriptive. Are the words "in the nighttime" and "at any time" as used in other parts of the same section only descriptive?

As pointed out supra by use of emphasis, the legislature in the several parts of chapter 708 has specifically made time a part of each defined offense. If the legislature intended "in the daytime" to have no significance they would have used "either by day or night" or "at any time" as was done where so desired. Judicial removal of "in the daytime" as an element of the first offense defined in section 708.8 unduly enlarges the offense and creates an offense covering the same crime defined in section 708.1. Obviously this is contrary to the clear legislative intent. Otherwise why is

the statutory penalty for nighttime breaking and entering into a dwelling house made greater than that for daytime breaking and entering a dwelling house?

Iowa Bar Uniform Instruction No. 505.5 includes "in the daytime" as an element of the offense here being considered. It, like other uniform instructions, was prepared and approved by a committee of experienced and capable members of the bar and the district court bench. While not controlling, their work product should be carefully considered. In addition, use of the instruction for several years with "in the daytime" as an element indicates judicial recognition thereof.

Case law from other jurisdictions varies as statutes of the particular states are not the same as those found in chapter 708. However my conclusion is strongly supported by the holding in *State v. Briggs*, 161 Conn. 283, 287 A.2d 369. There in analyzing statutes very similar to ours the court held the crime of breaking and entering a dwelling in the daytime is not a lesser included offense in the crime of burglary. The Connecticut statute defines burglary as breaking and entering a dwelling of another in the nighttime with the intent to commit a felony therein.

III. The majority expresses concern that a guilty person may not be punished when the evidence creates a problem of whether the crime was committed "in the nighttime" or "in the daytime." That of course furnishes no grounds for changing the specific provision of "in the daytime" which the legislature included in section 708.8. However, I believe the legislature has furnished the answer to any such problem. Code section 773.38 provides:

"Miscellaneous separate offenses. An indictment may charge in separate counts:

1. A burglary and one or more other indictable offenses committed in connection with said burglary. * * *."

I would not reverse on the ground the trial court erred in refusing to submit breaking and entering a dwelling in the daytime.

LeGRAND, REES and REYNOLDSON, JJ., join this dissent.