STATE of Iowa, Appellee,

v.

Robert C. OGG, Appellant.

No. 58588.

Supreme Court of Iowa.

June 30, 1976.

John C. Wellman, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Thomas Mann, Jr., Asst. Atty. Gen., and Ray A. Fenton, County Atty., for appellee.

LeGRAND, Justice.

This appeal presents two evidentiary questions which arose during defendant's trial for possession of a controlled sub-

stance. We reverse on one; and since we remand for further proceedings, we resolve the other for the guidance of the trial court and counsel in the event of another trial.

The information charged defendant with possession of a controlled substance with intent to deliver. § 204.401(1), The Code. The contraband in question consisted of 46 LSD tablets.

I. Defendant claims it was error to permit a police officer to testify the amount of LSD in defendant's possession at the time of his arrest "far exceeds what one might possess for personal use."

■ We have faced similar problems in various forms several times in the past several years. The rule developed from these cases is that a properly qualified witness may testify to the customs and practices of those who use or deal in narcotics. *State v. Boyd,* 224 N.W.2d 609, 613 (Iowa 1974). From these circumstances and any other evidence produced, the jury must find whether the drug is held for personal use or for delivery. This determination is not to be made by a witness, no matter how expert he is. *State v. Oppedal,* 232 N.W.2d 517, 524 (Iowa 1975); *State v. Horton,* 231 N.W.2d 36, 38 (Iowa 1975).

In the present case, Officer Zimmerman was asked to state whether the quantity defendant possessed would be "more or less than that which would be considered for personal use." Over proper objection, he was allowed to give his opinion and stated:

"In my opinion, 46 tablets of LSD far exceeds what one might possess for personal use."

Although phrased a little differently, the effect of this statement was identical to the objectionable answers in *Oppedal* and *Horton.* Ordinarily possession of drugs is either for personal use or for delivery to others. Quite obviously Officer Zimmerman's answer was intended to convey the idea defendant was guilty of the latter rather than the former. This was the indisputable impact of that testimony, and it is precisely the vice condemned in *Oppedal* and *Horton.* It also violates the rule we have firmly adhered to since *Grismore v. Consolidated Products Company,* 232 Iowa 328, 361, 5 N.W.2d 646, 663 (1942), (and have recently reiterated in *Oppedal* ), where we said:

"No witness should be permitted to give his opinion directly that a person is guilty or innocent, or is criminally responsible or irresponsible * * * "

This case bears some similarity to *State v. Droste,* 232 N.W.2d 483, 488 (Iowa 1975). In *Droste* we held it was error to permit a witness to say the results of a breath test exceeded the alcohol limit allowed by § 321.281. We said this:

"When a standard, or a measure, or a capacity has been fixed by law, no witness, whether expert or non-expert, nor however qualified, is permitted to express an opinion as to whether or not the person or the conduct, in question, measures up to that standard. On that question the court must instruct the jury as to the law, and the jury must draw its own conclusion from the evidence."

In the case now before us there is no specific statutory standard. However, the section fixes a general test based on intent to determine which degree of an offense defendant is guilty of. The rationale of *Droste* is even more persuasive where the criterion to be applied is such a subjective one as defendant's intent.

■ We hold Officer Zimmerman here was improperly permitted to express an outright opinion as to defendant's guilt on one of the essential elements of the crime.

The case must be reversed for that reason.

II. Defendant's second complaint is based upon the trial court's ruling allowing the same officer to express his opinion concerning the effects of LSD. Defendant argues the witness was not a chemist nor was he shown to be otherwise qualified to give his opinion on this matter.

■ The admission or rejection of expert testimony is largely a matter of trial court discretion. We will not interfere absent manifest abuse. *State v. Martin,* 217

N.W.2d 536, 545–546 (1974); *Ganrud v. Smith,* 206 N.W.2d ·311, 314–316 (Iowa 1973). In *Martin* the proffered evidence of the effects of LSD was rejected. In *Ganrud* evidence by a non-medical witness concerning retrograde amnesia was allowed. In each case we affirmed, finding no abuse of discretion in either ruling. *See also Rigby v. Eastman,* 217 N.W.2d 604, 608 (Iowa 1974).

We detail Officer Zimmerman's qualifications to express an opinion on the effects of using LSD. He had been a narcotics officer for three years. He graduated from Des Moines Area Community College and received two degrees, one in law enforcement and one in criminalistics. He took college courses in psychology, social issues, and toxicology and narcotics. The last course covered all drugs and their elements, including their effects on the human body. He attended a school sponsored by the National Training Institute and the Department of Drug Enforcement at Washington, D. C. for a two week period. Part of this course dealt with the characteristics of LSD. He had read a number of books on drugs and received a monthly fact sheet on drugs, including LSD, from the National Training Institute. He had participated in a number of drug raids where LSD was seized. He had made 15 or 20 street purchases of LSD as an undercover agent. He had talked about the drug with approximately 200 users over a period of time.

Although he has had no training as a chemist, he testified he has had training in recognizing and identifying LSD.

After the above facts were shown, the witness was allowed to say, over proper objection, that LSD is a hallucinogenic, mind-altering drug. He was also allowed to say that LSD has a short shelf life and quickly deteriorates.

We hold Officer Zimmerman's qualifications outlined above warranted the admission of this testimony. We find no abuse of discretion in the trial court's ruling.

III. For the reasons stated in Division I, the judgment is reversed and the case is remanded for a new trial.

REVERSED AND REMANDED FOR NEW TRIAL.

MASON, RAWLINGS, REES and REYNOLDSON, JJ., concur.

UHLENHOPP, J., MOORE, C. J., and HARRIS and McCORMICK, JJ., dissent.

UHLENHOPP, Justice (dissenting).

The court finds error in the allowance of the prosecutor's question "whether or not this quantity [46 pills] would be more or less than what would be considered for personal use." I believe the question to be proper.

I. *Opinions on Ultimate Facts vs. Opinions on Questions of Law.* The case involves the distinction between opinions going to the "ultimate fact" to be decided by the jury and opinions going to questions of domestic law.

A. In this jurisdiction, opinion evidence going to an ultimate fact has been unobjectionable since the landmark decision in *Grismore v. Consolidated Products Co.,* 232 Iowa 328, 5 N.W.2d 646. "[T]he fact that the matter inquired about is a vital and controlling fact in the trial, or is even the ultimate fact, which the jury are to pass upon and determine, is no reason why the opinion should not be received." *Id.* at 343–344, 5 N.W.2d at 655. See also *Winter v. Honeggers' & Co., Inc.,* 215 N.W.2d 316, 321 (Iowa); *Brower v. Quick,* 249 Iowa 569, 88 N.W.2d 120; Fed.R.Evid. 704 ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."). This rule applies in criminal as well as civil trials. *State v. McCarty,* 179 N.W.2d 548, 552 (Iowa).

B. Analytically quite separate from the "ultimate question" concept is the rule that a witness, regardless of his expertise, may not opine on matters of domestic law. The court in *Grismore* said:

No witness should be permitted to give his opinion directly that a person is guilty

or innocent, or is criminally responsible or irresponsible, or that a person was negligent or not negligent, or that he had capacity to execute a will, or deed, or like instrument . . . . [Such matters] are mixed questions of law and fact. When a standard, or a measure, or a capacity has been fixed by the law, no witness whether expert or non-expert, nor however qualified, is permitted to express an opinion as to whether or not the person or the conduct, in question, measures up to that standard. On that question the court must instruct the jury as to the law, and the jury must draw its own conclusion from the evidence. 232 Iowa at 361, 5 N.W.2d at 663.

See also *Briney v. Tri-State Mut. Grain Dealers Fire Ins. Co.*, 254 Iowa 673, 117 N.W.2d 889.

Thus a witness may not testify that a certain structure violates a zoning ordinance, *M. Capp Mfg. Co. v. Hartman*, 260 Iowa 24, 148 N.W.2d 465; or whether a testator was competent, *In re Ransom's Estate*, 244 Iowa 343, 57 N.W.2d 89; or how a certain blood-alcohol level compared to the statutorily-prescribed level the presence of which constitutes presumptive evidence of intoxication, *State v. Droste*, 232 N.W.2d 483 (Iowa). See also *Commonwealth v. Porn*, 196 Mass. 326, 82 N.W. 31 (excluding testimony that midwifery was not "the practice of medicine" within a statute); 32 C.J.S. Evidence § 453 at 95; 31 Am.Jur.2d Expert & Opinion Evidence § 69 at 579, 580.

As a further example, a witness may not state, "Defendant was, in my opinion, negligent"—since the word "negligent" has a special legal meaning. See *State v. Billings*, 242 N.W.2d 726 (Iowa). Such testimony is improper for two reasons. First, the witness' understanding of the word "negligent" may not be the same as the legal definition—in which case the jury is implicitly being given an erroneous definition, by application, of the word "negligence." This possibility of confusion of meanings is stressed in McCormick, Evidence (2d ed.) § 12 at 28–29. See also *Lindley v. Lindley*, 384 S.W.2d 676, 682 (Tex.) (doctor held in-

competent to testify that testator suffered an insane delusion—"a doctor's concept of what constitutes an insane delusion may be quite different from the legal concept").

Second, even if the witness' concept of the term ("negligence," "held for delivery," "probable cause," and so on) is the same as the legal concept, a witness arguably should not be allowed to answer a question including such a term, and thereby apply a legal standard to the facts, when under our system *the judge* instructs the jury on the law. This is the position taken in *State v. Droste*, supra, and *State v. Johnson*, 224 N.W.2d 617, 622 (Iowa). But see *State v. Johnson*, 237 N.W.2d 819 (Iowa).

The particular form of the question put to the witness is significant in determining whether the question involves a matter of law. The mere use of a term with a special legal meaning may be enough to make the question objectionable. Hence, while a witness may say that a defendant doctor failed to use the knowledge, skill, care, and attention ordinarily exercised by doctors under like circumstances, he may not say the defendant was "negligent." *Speed v. State*, 240 N.W.2d 901 (Iowa). Nor may a witness say an offense occurred at night, where "night" has a specialized legal meaning. *State v. Billings*, 242 N.W.2d 726 (Iowa). A witness' use of the word "rape" has caused the court some concern. *State v. Miller*, 254 Iowa 545, 117 N.W.2d 447. In holding the use of the word did not involve reversible error, the court noted:

> The word "rape" is not peculiar to the law or legal language. It appears in the chapter heading and in several of our statutes but, the word does not even appear in section 698.1, Code of Iowa, I.C.A., defining the offense [rape] with which defendant was charged. The word does, however, have a commonly understood meaning and is no stranger to non-legal language. 254 Iowa at 554, 117 N.W.2d at 453.

The proposition is thus well established that a question asking an opinion of law or of mixed law and fact (requiring application of a legal standard to the facts) may

not properly be put to a witness. Parenthetically, I note McCormick thinks that in "a jurisdiction [like Iowa] where there is no general rule against opinions on the ultimate issue, it seems that a request by the adversary that the questioner define his terms should be the only recourse." McCormick, Evidence (2d ed.) § 12 at 29. And Wigmore thinks any danger of confusion on the meaning of terms can be overcome by opposing counsel's power to ask the witness on cross-examination to say what he meant by the terms used. VII Wigmore, Evidence (3d ed.) § 1960 at 94. Our Iowa cases hold, however, that questions eliciting opinions involving legal matters are inadmissible.

C. The distinction between opinions as to ultimate facts and opinions on mixed questions of law and fact is controlling in the instant case. The prosecutor asked the witness Zimmerman whether, based upon his experience, 46 LSD pills are "more or less than that which would be considered for personal use." Zimmerman answered, "In my opinion, 46 tablets of LSD far exceeds what one might possess for personal use."

Zimmerman's answer clearly goes to an ultimate question to be decided by the jury —whether, under § 204.401(1), defendant possessed the tablets with intent to deliver. But *Grismore* and subsequent cases hold that an opinion *may* go to an ultimate fact. Yet in its decision in the present case the court states, "[T]he jury must find whether the drug is held for personal use or for delivery. This determination is not to be made by a witness, no matter how expert he is." I think this statement reflects the pre-*Grismore* prohibition of opinion testimony on ultimate facts.

Is the prosecutor's question here objectionable because it involves a mixed matter of law and fact? The particular form of the question is of utmost importance. The question was whether 46 tablets would be considered for personal use. The words "personal use" do not have a specialized legal meaning. They do not appear in § 204.401(1). The judge would not need to instruct on their meaning. The question

put to Zimmerman did not call for an opinion of law or for the application of law to the facts. It called for an opinion of pure fact. In answering the witness did not say that defendant "possessed the tablets with intent to deliver" or speak in other specialized legal terms.

The court states in its opinion, "Officer Zimmerman's answer was intended to convey the idea defendant was guilty of [possession with intent to deliver]." The court stresses that the opinion testimony in effect and impact went to defendant's guilt. But that is usually the impact of an opinion. A question, Did or did not the doctor use the skill and care ordinarily exercised by doctors under similar circumstances? has the impact of proving due care or negligence. But the question is nonetheless permissible.

The witness here did not say, "Defendant is guilty"; so to testify would require the witness to apply the law to facts—to testify to a mixed question of law and fact. To answer the question actually put to him, *Zimmerman did not have to apply any law or to assume a definition of any legal term.*

I thus think that the trial court properly overruled defendant's objection. A question is *not* objectionable because it elicits an opinion tending to prove or disprove an ultimate fact. A question *is* objectionable if it calls for an opinion of domestic law or for the application of law to facts, but the question here did not do so.

II. *Iowa Cases.* Certain recently-decided Iowa cases involve the problem before us.

Two such cases are State v. Boyd, 224 N.W.2d 609, 613 (Iowa), and State v. Lynch, 197 N.W.2d 186, 190 (Iowa), cert. den. 409 U.S. 1116, 93 S.Ct. 916, 34 L.Ed.2d 700. Those decisions hold that an expert may testify marijuana is packaged and measured in a certain way for sale purposes. Such testimony of course goes to the ultimate fact of the defendant's intent to deliver. Those cases like the present one involve opinion testimony on purely factual issues, tending to prove the defendant's intent to deliver. I do not see how those cases can be reasonably distinguished from this one.

More troublesome is *State v. Horton,* 231 N.W.2d 36, 38 (Iowa). There the prosecutor asked the witness whether he thought the defendant possessed the marijuana for personal. use or for sale. The witness replied, "My opinion would be that the marijuana was being held for delivery or to be delivered." This court said, "[T]he combined question and response at issue plainly crossed that 'fine but essential' line between opinion which would be truly helpful to the jury and that which merely conveys a conclusion concerning defendant's legal guilt." The question asked in *Horton* is similar to the present one, in that neither question includes any statutory term like "deliver." The case may, however, be distinguished. The court said "the *combined question and response* " crossed the line. (Italics added.) The witness' answer included the statutory term "delivery." We do not have that factor here.

Also troublesome is *State v. Oppedal,* 232 N.W.2d 517, 524 (Iowa). There the prosecutor asked the officer whether in his opinion the marijuana seized was possessed by the defendant for personal use. The officer answered that in his opinion it was possessed for sale and distribution. The court said the defendant's objection at trial was inadequate to preserve error on the ground that the question went to an improper subject of expert testimony. The court went on, however, first to quote from *State v. Lynch,* supra, and then to say:

> However, intent to deliver is an essential element of the crime charged in this case, and permitting a witness to testify directly that he had an opinion that a quantity of drugs was possessed by the defendant "with intent to deliver" is tantamount to permitting the witness to testify he had an opinion as to the ultimate fact of defendant's guilt or innocence. 232 N.W.2d at 524.

The opinion does not make clear whether a question, "Was the marijuana possessed for personal use?" is as objectionable as a question, "Was the marijuana possessed with intent to deliver?" If the opinion meant to say that, I disagree. Anyway, the *Oppedal* case is probably distinguishable from the present one, since the defendant Oppedal did not actually present the issue by interposing an objection which would do so. But if *Oppedal* does hold that an opinion cannot be given on the ultimate question, it is simply contrary to *Grismore.*

I would thus affirm the present judgment. It is a pity that we seem to be retreating from the bold advance made in *Grismore.* The old prohibition against opinions on ultimate questions, thought to be put to rest by *Grismore,* is creeping back into Iowa law.

MOORE, C. J., and HARRIS and McCORMICK, JJ., join in this dissent.