# IN THE COURT OF APPEALS OF IOWA

No. 13-0909
Filed October 29, 2014

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**TERRELL LAMONT BAILEY,**
　　　Defendant-Appellant.

_____

Appeal from the Iowa District Court for Des Moines County, Mary Ann Brown, Judge.

Terrell Bailey appeals from his convictions for possession of a controlled substance with intent to deliver and two counts of possession of a controlled substance. **AFFIRMED.**

Thomas Hurd of Glazebrook, Moe, Johnston & Hurd, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Alexandra Link and Kevin Cmelik, Assistant Attorneys General, Patrick C. Jackson, County Attorney, and Tyron T. Rogers, Assistant County Attorney, for appellee.

Heard by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**PER CURIAM**

Terrell Bailey appeals his convictions for possession of marijuana with intent to deliver and two counts of possession of a controlled substance.  Bailey claims his trial attorney was ineffective in failing to object to the State's questioning, which elicited opinions on the ultimate issue of his intent to distribute the marijuana in his possession.  He further claims counsel was ineffective in failing to object to the jury instruction defining "knowledge."  Therefore, we affirm the conviction and preserve both ineffective-assistance-of-counsel claims for postconviction-relief proceedings to allow counsel an opportunity to address the claims.  *See State v. Shortridge,* 589 N.W.2d 76, 84 (Iowa Ct. App. 1998).

**AFFIRMED.**

All judges concur except Vogel, J., who concurs specially.

**VOGEL, P.J.** (concurring specially)

Given the record now before us, I believe Bailey's ineffective-assistance claims can be resolved on direct appeal, and that neither have merit. Consequently, I would deny both claims rather than preserving them for possible postconviction relief proceedings.

The facts of this case are important to Bailey's ineffective-assistance claims. In the early morning hours of June 22, 2012, Officer Jason Webster pulled over a vehicle in which Bailey and three others were passengers. Bailey was in the back seat. When Officer Webster shone a flashlight on Bailey, the officer observed what appeared to be marijuana on Bailey's lap. Bailey was ordered out of the car, handcuffed, and told he was being detained. Officer Robert Rohrer, a detective in the Southeast Iowa Narcotics Task Force, was also on the scene. He attempted to scrape the marijuana off of Bailey's pants and, while doing so, a bag of pills fell out of Bailey's shirt. Bailey was then placed in the back of the patrol car, at which point Officer Rohrer noticed a bag of marijuana protruding from Bailey's pant leg. The bag also contained what was later determined to be cocaine and four hydrocodone pills, along with the 35.52 grams of marijuana. A further search turned up approximately $100 in Bailey's pocket and $400 in his sock.

Bailey takes issue with three portions of the officers' testimony. The first exchange between the State and Officer Webster took place as follows:

> Q: And you've indicated that you've had many instances where you've come across individuals who possessed marijuana?
> A: Yes.
> Q: Based on your experience, the amount of marijuana that you saw in the baggie, did that appear to you to be a small amount

of marijuana or a more significant amount of marijuana? A: In my training and experience, it's more than personal use, what Mr. Bailey had.

The second exchange was between the State and Officer Rohrer:

Q: Based upon your experience, both when you were a patrol officer and as a member of the task force, in dealing with people who you knew to be a user—only users of marijuana, was there a range of weights that they would—that they would generally possess?
. . . .
A: It's hard to say in a range-wise, but I would say typically under like ten grams, would be what I experience.
Q: You said under ten grams, but what I'm wondering is based on your experience, is there—is there a range within that ten gram limit that would be typical for a person who is just a user, based on your experience? A: I will say probably between 1.75 grams and seven and a half grams.
Q: Okay. Based upon your experience both as a patrol officer and your experience on the Drug Task Force, in your experience, what is the most marijuana that you have ever encountered a person who you knew to be only a user possess? A: I think the most I can probably recall would be seven and a half to eight grams.
Q: So would it be correct that a person who possesses thirty-five or so grams has many times the amount of marijuana that a typical user would possess? A: Yes.
. . . .
Q: Detective Rohrer, based upon your training, your education, your experience, and the specific factors of this case, is the marijuana that you seized from the Defendant's pant leg consistent with marijuana for sale or marijuana for personal use? A: Marijuana for sale.
. . . .
Q: So it would be correct that the amount of marijuana that was located in the defendant's leg, it was several times more than what in your experience a typical user possesses? A: That's correct.

The State also examined Detective Chiprez, during which the following

exchange occurred:

Q: Detective, based on your extensive experience in the area of dealing with individuals who possess marijuana and your review of the evidence in this case, is the marijuana in this case

> consistent with possession for sale or transfer to another person—
> or is it consistent with possession for personal use only?
>
> . . . .
>
> A: It's consistent with possession with intent to sell.

Bailey argues that this combined testimony served to invade the province of the jury regarding the intent element for the possession with intent to deliver charge. Specifically, he cites two cases from the 1970's—*State v. Nimmo*, 247 N.W.2d 228, 229–30 (Iowa 1976), and *State v. Ogg*, 243 N.W.2d 620, 621 (Iowa 1976)—for the proposition that expert witnesses cannot testify the defendant had the intent to sell the controlled substance at issue. Consequently, he asserts, trial counsel was ineffective for failing to make the proper objections regarding the officers' statements.

It is well settled that experts may testify about their opinion on an issue within their knowledge or expertise, though this testimony may not invade the province of the jury regarding an ultimate issue of fact. *See State v. Dinkins*, 553 N.W.2d 339, 341 (Iowa Ct. App. 1996) (noting this rule does not prohibit otherwise admissible expert testimony because it may "embrace an ultimate issue to be decided by the trier of fact"). However:

> The State may not ask whether an expert has an opinion or believes the defendant is guilty of the crime, or possessed drugs for sale as opposed to personal use. The State may properly ask a qualified expert, however, whether the particular facts of the case, stemming from the expert's field of expertise, would be characterized as drug dealing or drug consumption.

*Id.* (internal citations omitted). This distinction highlights the fine line between opinions that improperly interfere with the jury's role in determining guilt or innocence for specific intent crimes, and those opinions that properly characterize the defendant's conduct based on the facts. *See id.*

Specifically in the context of drug cases, expert testimony regarding the consistency of the facts of the case with general traits and patterns of drug dealer's modus operandi is often necessary "because the quality and quantity of drugs, the manner of packaging, the manner of secretion, the presence of drug paraphernalia, and many other circumstances may reflect whether drugs are possessed for personal use or for distribution." *Id.* Without this expert testimony, the significance of such facts will often be unknown to the jury. *See id.* Consequently, our courts have upheld the admission of expert testimony that offers an opinion regarding the consistency of the facts of the case with a drug dealer's modus operandi, as opposed to the mere possession for personal use. *See id.* at 342 (upholding the admission of testimony that the amount of drugs in the case and the lack of other drug paraphernalia "indicates a dealer"); *State v. Olsen*, 315 N.W.2d 1, 6–7 (Iowa 1982) (finding admissible testimony that the evidence found on the defendant "fit into the method of operation of a person who was selling drugs for profit").

It is notable *Dinkins* was decided after Iowa Rule of Evidence 5.704 established that an expert's testimony that is "otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."[1] Furthermore, our case law recognizes the need for the jury to hear the

---

[1] The official comment reads:

> This section is consistent with Iowa law. *See, e.g.*, *Grismore v. Consolidated Products Co.*, 5 N.W.2d 646, 232 Iowa 328 (1942). Note, however, that while this section and prior Iowa case law abolish the so-called ultimate issue rule, testimony from experts is not without limitations. Experts are not to state opinions as to legal standards. On this basis, questions such as whether X was negligent or whether a product was unreasonably dangerous may be excluded. *Aller v. Rodgers Machinery Mfg. Co., Inc.*, 268 N.W.2d 930 (Iowa 1978).

expert testimony of officers who are familiar with the modus operandi of drug dealers, and who can testify about the quantity of drugs that is consistent with the amount a drug dealer possesses. *See Dinkins*, 553 N.W.2d at 341; *see also State v. Grant*, 722 N.W.2d 645, 648 (Iowa 2006) (citing *Dinkins*, 553 N.W.2d at 342, and noting with approval the police officer's testimony "that one purchasing methamphetamine for personal use in the quantity that was involved here would ordinarily receive the substance in bulk packaging form"); *State v. Shumpert*, 554 N.W.2d 250, 254 (Iowa 1996) (holding counsel was not ineffective for failing to object to police officer's statement that the manner in which the crack cocaine was found indicated a dealer, given the testimony was properly admitted). The fact that these cases were decided more recently, and after it was established the jury should hear the opinion testimony of officers familiar with the modus operandi of drug dealers, distinguishes them from *Nimmo* and *Ogg*, the cases on which Bailey relies.

Here, the officers' testimony was confined to their opinion that the amount of drugs Bailey possessed was consistent with the quantity of marijuana possessed by someone with the intent to sell. Thus, our more recent case law counsels that these opinions did not cross that "fine but essential line." *Dinkins*, 553 N.W.2d at 341; *see also Grant*, 722 N.W.2d at 648. Consequently, Bailey was not prejudiced by trial counsel's failure to object to the testimony on the grounds of improper opinion testimony. *See State v. Greene*, 592 N.W.2d 24, 29 (Iowa 1999) (holding counsel does not breach an essential duty when declining to pursue a meritless objection).

I would also deny Bailey's ineffective-assistance claim based on trial counsel's failure to object to jury instruction fourteen defining knowledge. The jury instruction stated: "For the defendant to 'know' or 'have knowledge of' means he had a conscious awareness that the substance he possessed was *marijuana*" (emphasis added). "When a single jury instruction is challenged, it will not be judged in isolation but rather in context with other instructions relating to the criminal charge." *State v. Stallings*, 541 N.W.2d 855, 857 (Iowa 1995). The other jury instructions in this case properly stated the law and the State's burden on each charge. Jury instruction eighteen informed the jury that, to find Bailey guilty of possession of cocaine, it must find he "knowingly or intentionally possessed cocaine HCL." Jury instruction nineteen was similarly phrased—to find Bailey guilty of possession of hydrocodone, he must have "knowingly or intentionally possessed hydrocodone."

Viewed as a whole, I would conclude the instructions did not lower the State's burden on the possession charges. It is clear instruction fourteen contained a typographical error, and, combined with the other proper instructions, did not serve to prejudice the jury. *See Anderson v. Webster City Cmty. Sch. Dist.*, 620 N.W.2d 263, 267–68 (Iowa 2000) (noting prejudice only results "when the trial court's instruction materially misstates the law, confuses or misleads the jury, or is unduly emphasized" and holding that, even though one instruction improperly commented on the evidence, when considered as a whole the instructions did not mislead the jury). Consequently, trial counsel was not ineffective for failing to object to this instruction. *See Greene*, 592 N.W.2d at 29 (noting counsel is not ineffective for declining to pursue a meritless objection).

For these reasons, I would affirm Bailey's convictions and deny his ineffective-assistance claims on the merits.