**IN THE COURT OF APPEALS OF IOWA**

No. 16-0712
Filed June 21, 2017

**ANTHONY DONATELLO KEYS,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____

     Appeal from the Iowa District Court for Black Hawk County, David P.
Odekirk, Judge.

     Applicant appeals from the district court's denial of his application for
postconviction relief.  **AFFIRMED.**

     Jack Bjornstad of Jack Bjornstad Law Office, Okoboji, for appellant.

     Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney
General, for appellee State.

     Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**POTTERFIELD, Judge.**

Anthony Keys appeals from the district court's denial of his application for postconviction relief (PCR). Keys was convicted of possession of a controlled substance with intent to deliver (cocaine) following a jury trial in 2011. He was sentenced pursuant to the habitual-offender and second-offender enhancements and received a sentence of incarceration not to exceed twenty-five years. On direct appeal, Keys claimed his trial counsel was ineffective for failing to object to a jury instruction defining possession. A panel of our court affirmed Keys's conviction, finding no prejudice resulted from counsel's failure to object. *See State v. Keys*, No. 11-2089, 2013 WL 1457044, at *3 (Iowa Ct. App. Apr. 10, 2013). Keys initially filed his application for PCR in February 2015 and then filed an amended application in June 2015. In it, Keys maintained trial counsel was ineffective in five ways: failing to challenge the search of his hotel room, failing to obtain the officer's dash cam video, providing deficient advice concerning waiver of speedy trial, failing to call a potential defense witness to testify, and failing to question law enforcement witnesses. The district court denied his application, and Keys appealed.

Here, for the first time, Keys alleges both PCR counsel and direct-appeal counsel were ineffective for not raising the issue that trial counsel was ineffective for allowing an officer to testify as to his opinion that the amounts and circumstances of the controlled substance evidence indicated an intent to deliver—as opposed to merely possess for personal use—the cocaine. Keys may assert for the first time on appeal that his trial, appellate, and PCR counsel were ineffective. *See Dunbar v. State*, 515 N.W.2d 12, 16 (Iowa 1994) ("Once

the trial court appointed counsel to represent Dunbar in his attempt to obtain postconviction relief, Dunbar was entitled to the effective assistance of this counsel. If his court-appointed counsel was ineffective, Dunbar could raise this claim on his appeal from the denial of his application."). We review claims of ineffective assistance de novo. *See Everett v. State*, 789 N.W.2d 151, 155 (Iowa 2010). "To succeed on an ineffective-assistance-of-counsel claim, [Keys] must show '(1) counsel failed to perform an essential duty; and (2) prejudice resulted.'" *Id.* at 158 (citation omitted). "To establish prejudice, a defendant must show the probability of a different result is 'sufficient to undermine confidence in the outcome.'" *Id.* (citation omitted).

Keys maintains the expert witness was improperly allowed to testify, without objection from his trial counsel, that Keys had the intent to deliver the drugs. Specifically, Keys takes issue with the following pieces of testimony during the direct examination of Officer Adam Galbraith:

> Q. And in this case, from taking a look at the evidence that was found in this case, you termed this as more street-level dealing? A. Correct.
> . . . .
> Q. You testified regarding the initial scale and initial baggie. Do the two cell phones and the baggies that you found—and the baking soda and the other items, did those items do anything to change your opinion that the cocaine and the scale, that it was meant for sale and distribution? A. No, they do not change it.
> Q. Does it increase your opinion as far as to whether those items were held for sale and distribution? A. Yes.
> Q. Why is that? A. When you look at all the items together, two phones, the cocaine amount and the cocaine, the way it was packaged, the scale, the sandwich baggies, the baking soda, the glass; you compare all those things together and you put them together, it only strengthens and furthers my opinion of what this— this amounts of drug and what the individual was involved in.
> Q. Are these items in any way consistent with personal use only? A. No.

> . . . .
>
> Q. . . . . If there's the cash, the $327 that's also found in conjunction, does that strengthen—does that further strengthen your opinion that this cocaine was held for sale and distribution? A. Yes, it does.

We agree with Keys that an expert witness may not express his or her opinion about the guilt of the defendant. *See State v. Dinkins*, 553 N.W.2d 339, 341 (Iowa Ct. App. 1996) (stating that while an expert is allowed to testify about specialized knowledge that is helpful for the trier of fact to understand the evidence, "[t]hese basic precepts, however, do not permit a witness to express a direct opinion on the guilt or innocence of the defendant"). "Determining guilt or innocence is the exclusive function of the finder of fact; and consequently, is an improper subject of expert testimony." *Id.* "[B]ecause the quality and quantity of drugs, the manner of packaging, the manner of secretion, the presence of drug paraphernalia, and many other circumstances may reflect whether drugs are possession for personal use or distribution," an expert may "provide testimony to help the jury in understanding evidence of drug packaging, drug properties, and the like, and determining the element of intent." *Id.* In other words, the expert may express opinions "that the evidence in the case *is consistent* with selling drugs, and is properly admitted as a comparison for the jury, not an opinion of guilt." *Id.* at 342 (emphasis added). However, there is a "fine line between proper and improper testimony," and here, we believe the expert's testimony crossed that line. *See id.* "The State may not ask whether an expert has an opinion or believes the defendant is guilty of the crime, *or possessed drugs for sale as opposed to personal use.*" *See id.* (emphasis added).

Based on questions asked by the prosecutor, Officer Galbraith testified that Keys was involved in "street-level dealing," that the totality of the evidence "increased his opinion" the items were "held for sale and distribution" by Keys, and the items were "not consistent" with personal use. The testimony goes directly to the question whether Keys had the intent to deliver the drugs, and as such, it is an "improper subject of expert testimony." *Id.* at 341; *see also State v. Ogg*, 243 N.W.2d 620, 621 (Iowa 1976) (reversing where witness was allowed to testify over proper objection whether the quantity of drugs held by the defendant was "more or less than that which would be considered for personal use" because "quite obviously [the officer's] answer was intended to the convey the idea defendant was guilty of [delivery] rather than [possession]"). Trial counsel should have objected to the testimony.

However, we must still decide whether the counsel's failure to object is sufficient to undermine our confidence in the outcome of the trial. *See Everett*, 789 N.W.2d at 158. Keys maintains that he was prejudiced by the testimony because the evidence of intent to deliver was not overwhelming and all of the evidence Officer Galbraith described during other parts of his testimony "raise more than one possible inference." While much of the evidence the State maintained evinced Keys's intent to deliver was circumstantial, we disagree with Keys's contention that the evidence was not strong. Having a scale with white residue, two phones, and three separate packages of cocaine—totaling 3.75 grams (or slightly more than an "eight ball")—does not necessarily mean one is engaged in delivering cocaine. However, when considered in conjunction with the $327 found on Keys's person when he was not otherwise employed and had

also just paid for a number of nights in a hotel, the evidence is stronger. Additionally, a number of cutting agents—baking soda and crushed acetaminophen—were found in the hotel, and as Officer Galbraith testified, there is no reason to cut your cocaine if it is for personal use. The officers also recovered a number of small plastic bags with the corners torn off—evidence that someone had been using the hotel room to engage in packaging or repackaging drugs. While several of the pieces of evidence may support either someone carrying drugs for their personal use or for sale, we believe the amount of cash and the cutting agents are strong evidence that Keys was intending to deliver the cocaine. Additionally, while Officer Galbraith was allowed to make three impermissible statements about his opinion of Keys's intent to deliver, we note that those comments came in during a three-day trial. Officer Galbraith and a couple other officers properly testified that the items recovered during the investigation were consistent with other cases where individuals had been involved in delivering cocaine. *See id.* at 155 ("In determining whether this standard [of prejudice] has been met, we must consider the totality of the evidence, what factual findings would have been affected by counsel's errors, and whether the effect was pervasive or isolated and trivial."). Keys has not established that he was prejudiced by counsel's failure to object to Officer Galbraith's testimony.

Keys's claim of ineffective assistance fails. We affirm the district court's denial of his application for PCR.

**AFFIRMED.**