838 P.2d 975

STATE of New Mexico,
Plaintiff–Appellee,

v.

Jimmy Don RIGGS, Defendant–
Appellant.

No. 20035.

Supreme Court of New Mexico.

Sept. 2, 1992.

which effectively overruled the majority in *Taylor* and adopted the rationale of the dissenters.

Sammy J. Quintana, Chief Public Defender, Susan Roth, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Tom Udall, Atty. Gen., Max Shepherd, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BACA, Justice.

Defendant-appellant Jimmy Don Riggs appeals his first degree murder conviction and the accompanying mandatory life sentence. Defendant raises two issues that we address on appeal: (1) Whether he was denied his right to due process and a fair trial when the State deprived him of certain evidence; and (2) whether substantial evidence supports the guilty verdict.[1] Pursuant to SCRA 1986, 12–102(A)(2) (Repl.Pamp.1992), we note jurisdiction and affirm.

### I

The following facts, presented in the light most favorable to sustaining defendant's conviction, *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988), were adduced at defendant's second murder trial. Four days prior to the murder of Mary Whiteley, defendant attempted to persuade his roommate, Jimmy Clark, to kill Whiteley. During the evening of November 20, 1989, defendant and Whiteley left Whiteley's birthday party and went to the house that defendant shared with Clark. Earlier in the evening, defendant had asked Clark how to kill Whiteley, and Clark replied that he did not want to be involved. Shortly after defendant and Whiteley arrived at the house, Clark heard the victim enter the bathroom. Clark then heard the victim come out of the bathroom, and, seconds later, he heard two gunshots. Clark walked toward the sound and saw defendant dragging the victim's body across the kitchen floor. Clark turned off the lights and closed the blinds.

---

1. Defendant raised numerous other issues in his docketing statement. These issues, however, are deemed to be waived as defendant did not brief or argue them on appeal. *See State v.* *Clark,* 108 N.M. 288, 311, 772 P.2d 322, 345, *cert. denied,* 493 U.S. 923, 110 S.Ct. 291, 107 L.Ed.2d 271 (1989).

After commenting that he needed money, defendant took Whiteley's purse and placed it in the closet of the back bedroom of the house. When defendant asked Clark to think of a place to dispose of Whiteley's body, Clark suggested an abandoned house near his parents' home. Clark and defendant then loaded the body into a Honda hatchback that defendant had previously borrowed from Lance Ballard and covered the body with a blanket. The two men drove to the abandoned house and deposited the body in the bathroom of the house.

After he and Clark returned to their house, defendant retrieved Whiteley's purse, dumped out its contents, and found an envelope and a wallet containing in excess of $1,500. Defendant gave Clark approximately $400 and kept the rest. Defendant and Clark realized that they needed to dispose of the evidence, and, after cleaning the blood off of the kitchen floor, they left the house with Whiteley's purse and the gun. They threw the purse into a dumpster at a restaurant and, after wiping the gun down, threw it out of the window of the car as they drove. They then drove Ballard's car to the carwash to wash out the car. After noticing blood stains on one corner of the carpet in the back of the car, defendant cut out the blood-stained corner and then cut an identical piece from the other corner of the carpet so that the carpet would appear to have been installed with the corners cut out. After leaving Clark at the Game Room, defendant returned to the party.

On December 14, 1989, Whiteley's body was discovered in the abandoned house. She had died of two gunshots to the back of her head. On December 30, 1989, Clark, who was incarcerated on an unrelated burglary charge, told Detective Nymeyer of the Hobbs Police Department about the murder. Clark and police officers went to the house where the body had been left, and Clark showed the officers where he had thrown the revolver out of the car. On January 4, 1990, the revolver was found in the location that Clark indicated. When it was found, the revolver contained four loaded and two spent cartridges in its cylinder. In addition, the police searched defendant's house, finding a ring that Whiteley was wearing on the night of her murder.

Defendant was tried on two counts: (1) first degree murder contrary to NMSA 1978, Section 30-2-1(A)(1) & (2) (Repl.Pamp.1984); and (2) robbery while armed with a deadly weapon contrary to NMSA 1978, Section 30-16-2 (Repl.Pamp.1984). The State sought a sentence enhancement pursuant to NMSA 1978, Section 31-18-16 (Repl.Pamp.1990). Defendant's first trial resulted in a conviction on the robbery charge and a mistrial on the murder charge. He was subsequently retried and convicted for the deliberate and premeditated first degree murder of Whiteley. From this conviction, he appeals.

## II

Defendant first contends that he was denied a fair trial because the State lost physical evidence that could have cast doubt on his involvement in Whiteley's murder. During the murder investigation, a Hobbs police detective seized Clark's tennis shoes because the officer saw brown and red spots on the shoes that he believed to be blood. The police sent the shoes to the state crime lab to test for the presence of blood. When the crime lab returned the shoes to the police department without performing the tests, the police returned the shoes to Clark. Defense counsel filed a pretrial motion to dismiss based on lost evidence and renewed the motion before Clark testified at trial. The trial court denied each motion. Citing the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; Article II, Sections 14 and 18 of the New Mexico Constitution; *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967); and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct.App.1985), defendant contends that he was denied a fair trial and the right to effectively cross-examine Clark because of the State's failure to test and retain the shoes.

■ In *State v. Chouinard*, 96 N.M. 658, 634 P.2d 680 (1981), *cert. denied*, 456 U.S. 930, 102 S.Ct. 1980, 72 L.Ed.2d 447

(1982), we adopted a three-part test to determine whether a defendant's conviction should be reversed when the State deprives a defendant of evidence. In *Chouinard*, we cited with approval *State v. Lovato*, 94 N.M. 780, 782, 617 P.2d 169, 171 (Ct.App. 1980), and formulated the test as follows:

1) The State either breached some duty or intentionally deprived the defendant of evidence;

2) The improperly "suppressed" evidence must have been material; and

3) The suppression of this evidence prejudiced the defendant.

*Chouinard*, 96 N.M. at 661, 634 P.2d at 683. Even if the three-part test is met, reversal is not mandated unless the evidence is in some way "determinative of guilt." *Id.* at 662, 634 P.2d at 684.

In the instant case, defendant claims that his conviction should be reversed because the unavailability of the shoes meets the *Chouinard* test. First, defendant contends that the State intentionally deprived him of Clark's tennis shoes. Second, defendant claims that the shoes were material because the shoes were physical evidence that made Clark a suspect in Whiteley's murder. Finally, defendant claims prejudice because, in the absence of the shoes, the jury was unable to "seriously weigh the defense theory that Jimmy Clark could have murdered the victim and that [defendant] might have been the one acting as an accessory after the fact." Defendant concludes that the absence of the shoes deprived him of the right to effectively cross-examine Clark about Clark's involvement in the murder and deprived defendant of his right to a fair trial. We disagree.

■ In *Chouinard*, we discussed two possible options available to the trial court when the loss of evidence is known prior to trial. The first option is to exclude all evidence that might have been impeached by the lost evidence. 96 N.M. at 662, 634 P.2d at 684. The second option is to allow admission of all of the evidence that the lost evidence would impeach "with full disclosure of the loss and its relevance and import." *Id.* "The choice between these alternatives must be made by the trial court, depending on its assessment of materiality and prejudice. The fundamental interest at stake is assurance that justice is done, both to the defendant and to the public." *Id.* We review the trial court's decision for an abuse of discretion. *Id.* at 663, 634 P.2d at 685.

■ In the instant case, the trial court did not abuse its discretion by allowing Clark to testify and by denying defendant's motion to dismiss. Assuming arguendo that the State either intentionally or negligently deprived defendant of the shoes,[2] we find neither materiality of the shoes to the defense nor resulting prejudice. The record does not contain any evidence that Clark was wearing the shoes on the night of Whiteley's murder. Even if Clark was wearing the shoes on that night, that fact also supports Clark's testimony that he helped defendant dispose of Whiteley's body. In the instant case, as in *Chouinard*, "we cannot say that there is a realistic basis, beyond extrapolated speculation, for supposing that availability of the lost evidence would have undercut the prosecution's case." 96 N.M. at 663, 634 P.2d at 685. Thus, defendant has failed to show that the shoes were material to his defense.

■ Moreover, defendant was not prejudiced by the State's failure to preserve the shoes. Although the shoes and test results from the spots on the shoes were not available, defendant elicited testimony from the State's witnesses that they suspected that the spots on the shoes were blood, that they had failed to test for the presence of blood, and that they had no explanation for the failure to perform the tests. *See id.* at 662–63, 634 P.2d at 685–86 (articulating factors to be considered when evidence is lost). From this evidence, defendant asked the jury to draw the inference that Clark was involved in Whiteley's murder. The

---

**2.** The record does not contain evidence that the State intentionally deprived defendant of the shoes. However, the State "concede[d] that it may have breached its duty to the defendant [to

preserve that evidence]." *See State v. Stephens*, 93 N.M. 368, 369, 600 P.2d 820, 821 (1979) (recognizing State's duty to preserve relevant evidence, where practical).

jury, however, declined to draw this inference and instead chose to believe the testimony and evidence that pointed to defendant's guilt. Under these circumstances, we hold that the trial court did not abuse its discretion in declining to grant defendant's motion to dismiss.

## III

Defendant also contends that there is insufficient evidence in the record to support his first degree murder conviction. Defendant claims that the State failed to present any physical evidence to connect him to the crime. Defendant contends that his conviction is based solely on the testimony of Clark and that Clark's credibility was highly questionable. Citing the Fifth and Fourteenth Amendments to the United States Constitution; Article II, Section 14 of the New Mexico Constitution; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); and *State v. Sparks*, 102 N.M. 317, 694 P.2d 1382 (Ct.App.1985), defendant concludes that, because his conviction is based on insufficient evidence, it violates due process and must be reversed.

■ On appeal, we review the record to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). "Substantial evidence is that evidence which is acceptable to a reasonable mind as adequate support for a conclusion." *State v. Isiah*, 109 N.M. 21, 30, 781 P.2d 293, 302 (1989). We view the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict. *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319. We review all of the evidence presented in the case. *State v. Aranda*, 94 N.M. 784, 786, 617 P.2d 173, 175 (Ct.App.1980). We may not reweigh the evidence nor substitute our judgment for that of the jury. *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319.

■ The evidence adduced at trial favorable to supporting the conviction is as follows. Clark testified that he and defendant had discussed Whiteley's murder four days before the murder occurred; that Clark attended Whiteley's birthday party on November 20th and had returned to his house at about 10:00 p.m.; that defendant came to the house in Ballard's car and asked Clark to assist him in killing Whiteley; that after he refused Clark's request, defendant left and returned with Whiteley; that he heard Whiteley come out of the bathroom, and seconds later, heard two gunshots; that he went into the kitchen and found defendant dragging Whiteley's body across the floor; that he and defendant placed Whiteley's body in Ballard's car, drove to an abandoned house, and disposed of the body; that he and defendant split the money in Whiteley's purse; and that he and defendant disposed of evidence of the crime.

In addition, evidence in the record corroborates Clark's testimony. James Jeffers, Whiteley's roommate, testified that, on the night of Whiteley's murder, Whiteley was carrying between $1,500 and $2,000; that defendant and Whiteley left the party together; that defendant returned to the party several hours later without Whiteley. Jeffers also identified a ring, which was found at defendant's house, as the ring that Whiteley was wearing on the night of her murder. Ballard testified that he saw defendant and Whiteley talking at the party; that he loaned his car to defendant; that defendant and Whiteley left the party at approximately 10:30 p.m.; and that defendant returned to the party at approximately 11:30 p.m. without Whiteley. Lieutenant Nymeyer testified that police found a revolver in the location that Clark indicated that he had thrown it. Nymeyer also testified that when the revolver was opened in his presence, it contained two spent and four loaded cartridges.

In challenging the sufficiency of the evidence, defendant contends that Clark's testimony is insufficient to establish defendant's identity as the murderer and that Clark was not a credible witness. The jury, and not this court, however, resolves questions of credibility and the weight to

be given to testimony. *State v. Vigil,* 87 N.M. 345, 350, 533 P.2d 578, 583 (1975). The record contains substantial evidence to support the guilty verdict beyond a reasonable doubt with respect to every element essential to a conviction. *See* NMSA 1978, § 30–2–1(A)(1); SCRA 1986, 14–201. Defendant's conviction is AFFIRMED.

IT IS SO ORDERED.

MONTGOMERY and FROST, JJ., concur.