This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-36319

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**EZEKIEL SILIAS RENICK,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett R. Loveless, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Judge.**

**{1}** The opinion filed November 18, 2019, is hereby withdrawn and this opinion is substituted in its place.

**{2}** Defendant Ezekiel Renick appeals his convictions, in separate trials, for possession of drug paraphernalia and possession with intent to distribute methamphetamine, respectively. Defendant argues that insufficient evidence supported

the possession element of his convictions, and that the district court abused its discretion in permitting the State's expert in narcotics trafficking to testify that the quantity of drugs in Defendant's possession was more consistent with trafficking than with personal use. We conclude that sufficient evidence supported both convictions, and that the district court did not abuse its discretion in admitting the challenged expert testimony. Accordingly, we affirm.

**Background**

**{3}**     On July 13, 2014, Detective David Nix arrived at a residential home in Albuquerque, New Mexico, and served a search warrant in connection with a burglary investigation. Four individuals were present, including Defendant. In the course of searching the home, Detective Nix found a black and gray lockbox inside a cabinet/nightstand in the southwest bedroom. When Detective Nix opened the lockbox, it appeared to contain (among other things) narcotics, so the police secured the residence, and contacted the District Attorney's office to obtain a second amended search warrant. Detective Nix obtained a second amended search warrant, and more thoroughly searched the lockbox, which contained what was later confirmed to be methamphetamine powder (packaged in several baggies); empty small plastic coin-sized baggies; four glass pipes with white residue; a handgun; a speed loader for the handgun filled with .38 caliber ammunition; a prescription medication bottle with the name "Robert W. Coberly" on the label (part of which was torn off), filled with approximately 30 pills; a SIM memory card; three digital scales; and a coffee tin with a false bottom. Certain papers were also found inside the lockbox: a social security card and New Mexico driver's license for one Kathleen Anaya; an undated receipt made out to Defendant at the address of the residence for purchase of a refrigerator, stove, and water heater; and a piece of paper apparently containing shipping instructions for the methamphetamine.

**{4}**     Before executing the second warrant, Detective Nix interviewed Defendant and the other individuals in the home. The audio recording of Detective Nix's interview with Defendant was played during each of Defendant's trials, but the interview was not provided in the record on appeal.[1] Defendant does not contest the State's characterization of the interview during which it appears that Mr. Renick stated, inter alia, that: he stayed in the southwest bedroom with his girlfriend, though others also accessed the bedroom; he had stayed in that bedroom for a couple of weeks prior to July 13, 2014; he had cleaned out the bedroom before moving into it; he owned "a lockbox but no meth"; and he worked with computers. A clutter of various computer

---

[1]Indeed, no trial exhibits were included in the record on appeal. "It is [the] defendant's burden to bring up a record sufficient for review of the issues he raises on appeal." *State v. Padilla*, 1980-NMCA-141, ¶ 7, 95 N.M. 86, 619 P.2d 190. As a general matter, "[w]hen the record is incomplete, this Court assumes that the missing portions would support the trial court's determination." *State v. Doe*, 1985-NMCA-065, ¶ 23, 103 N.M. 233, 704 P.2d 1109. We also "indulge all inferences in favor of upholding the verdict[,]" *State v. Riggs*, 1992-NMSC-057, ¶ 14, 114 N.M. 358, 838 P.2d 975; thus, we accept as accurate representations regarding Defendant's recorded statement, along with the content of other exhibits not objected to during trial or otherwise addressed in Defendant's brief in chief (no reply brief having been filed).

components was found in the southwest bedroom (and nowhere else). No other lockboxes were found in the residence.

**{5}** Defendant was later arrested and tried on charges of (1) trafficking a controlled substance, by possession with intent to distribute methamphetamine, contrary to NMSA 1978, Section 30-31-20(A)(3) (2006); and (2) possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1(A) (2001, amended 2019). The jury found Defendant guilty on the charge of possession of drug paraphernalia, but was unable to agree to a verdict on the trafficking charge, resulting in a mistrial. Four months later, Defendant was tried again on the trafficking charge, and found guilty.

**{6}** In both trials, the State submitted over fifty evidentiary exhibits, including many of the items seized from the lockbox, photographs of those items, and photographs of the interior of the residence. The State called Detective Nix and Manuel Gomez, a forensic scientist of the Albuquerque Police Department crime laboratory as witnesses. Mr. Gomez identified the baggies of powder found in the lockbox as methamphetamine (totaling approximately 34 grams), and a number of the pills from the lockbox as containing codeine. In the second trial, the State also called Detective Jimmie Jones, III as an expert in narcotics trafficking—specifically, as an expert in "distinguishing between personal use and trafficking amounts" of controlled substances. Detective Jones testified about his education, experience and training in narcotics investigations; the street value of methamphetamine according to weight; the typical amounts of methamphetamine possessed by users versus traffickers of the drug; and other factors relevant to a determination as to whether an individual possesses a drug for personal use versus use in trafficking. Detective Jones testified that he examined the evidence in Defendant's case and that, in his opinion, the evidence was "more consistent with trafficking than personal use" due to the volume of methamphetamine, and the presence of items such as the digital scales. Defendant submitted no evidence in either trial.

**Discussion**

**Sufficient Evidence Supported the Verdict**

**{7}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "[O]ur role is to determine whether a rational fact-finder could determine beyond a reasonable doubt the essential facts necessary to convict the accused." *State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72. "In reviewing whether there was sufficient evidence to support a conviction, we resolve all disputed facts in favor of the [s]tate, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Largo*, 2012-NMSC-015, ¶ 30 (internal

quotation marks and citation omitted). "We do not reweigh the evidence or substitute our judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." *State v. Pitner*, 2016-NMCA-102, ¶ 6, 385 P.3d 665 (internal quotation marks and citation omitted).

**{8}** Defendant argues that there was insufficient evidence to support the possession element of his convictions for possession of drug paraphernalia and trafficking by possession with intent to distribute methamphetamine, because, other than his non-exclusive access to the bedroom where the items were found, his only connection to the items was a "random receipt for household goods" found in the same lockbox. We disagree with this characterization of the evidence, and hold that, under the applicable law, reasonable jurors could have concluded beyond a reasonable doubt that Defendant constructively possessed drug paraphernalia and methamphetamine.

**{9}** UJI 14-130 NMRA defines possession as follows:

A person is in possession of (*name of object*) when, on the occasion in question, he knows what it is, he knows it is on his person or in his presence and he exercises control over it.

Even if the object is not in his physical presence, he is in possession if he knows what it is and where it is and he exercises control over it.

Two or more people can have possession of an object at the same time.

A person's presence in the vicinity of the object or his knowledge of the existence or the location of the object is not, by itself, possession.

**{10}** Thus, the possession element of an offense is satisfied where there are facts from which a jury could reasonably infer that the defendant "(1) knew of the presence of the [object at issue], and (2) exercised control over it." *State v. Maes*, 2007-NMCA-089, ¶ 13, 142 N.M. 276, 164 P.3d 975; *State v. Brietag*, 1989-NMCA-019, ¶ 14, 108 N.M. 368, 772 P.2d 898 (holding that possession requires a "rational connection between the location of the [object] and [the] defendant's probable knowledge and control over [it]"); *see State v. Barber*, 2004-NMSC-019, ¶ 28, 135 N.M. 621, 92 P.3d 633 (noting that "possession denotes facts pertaining to the relationship between a person and an item of property, as well as the consequences that attach to those facts" (internal quotation marks and citation omitted)). A jury may infer knowledge and control from the defendant's actions, statements, or conduct, and from circumstantial evidence connecting the defendant to the object. *Barber*, 2004-NMSC-019, ¶ 27; *State v. Phillips*, 2000-NMCA-028, ¶ 8, 128 N.M. 777, 999 P.2d 421.

**{11}** Here, in Defendant's trials, UJI 14-130 was appropriately incorporated into the jury instructions for possession of drug paraphernalia, and trafficking by possession with

intent to distribute methamphetamine. Defendant argues that, under these instructions, the juries could not have found the requisite knowledge and control. Defendant relies on *Maes*, 2007-NMCA-089, ¶ 14, and *Brietag*, 1989-NMCA-019, ¶ 15, in which we held that mere proximity to, or the mere presence of narcotics in a home does not suffice to show possession where the defendant does not have exclusive access to the area. We are not persuaded. In *Brietag*, the defendant did not have exclusive access to the bedroom in which cocaine, methamphetamine and drug paraphernalia were found; rather, the bedroom was a "crash pad . . . occupied by a number of people." 1989-NMCA-019, ¶¶ 4, 5, 16 (internal quotation marks omitted). Moreover, although "the fact that [drugs] are found in close proximity to [a defendant's] personal belongings may be a circumstance sufficient to link him with the possession of those drugs," *id.* ¶ 14, in that case, "the police found the personal possessions of several people throughout the . . . bedroom," and there was no evidence linking the defendant to other items in the bedroom, whose ownership was unknown. *Id.* ¶ 15. It was also "significant that [the] defendant was absent from the house, and had been absent for some time, when the search warrant was executed." *Id.* ¶ 17. The facts presented in *Maes*, 2007-NMCA-089, ¶¶ 5-9, 14, were similar to *Brietag*, in that the defendant did not have exclusive access to the bedroom where the methamphetamine residue was found. Furthermore, although the defendant was present during the search of the home, she had not been present during two prior searches, and she stated to the police that she did not live there. *Maes*, 2007-NMCA-089, ¶¶ 8, 9. The police found two pieces of mail addressed to the defendant, but they were not addressed to the home that was searched, and there were no other items connecting the defendant to the home. *Id.* ¶¶ 6-7, 16, 19.

{12}    Here, by contrast, there were adequate facts from which a jury could reasonably have inferred Defendant's knowledge and control of the drug paraphernalia and methamphetamine. *See Phillips*, 2000-NMCA-028, ¶¶ 5, 8-11 (holding that, although the accused did not have exclusive access to the bedroom at issue, and another person with whom she shared the bedroom claimed to possess the contraband and drug paraphernalia, additional circumstances, such as the quantity of drugs, the paired quality of the paraphernalia, and the defendant's admitted past use, allowed the jury to infer constructive possession). There was evidence that the southwest bedroom, in which police found the lockbox containing the methamphetamine and paraphernalia, was Defendant's bedroom. Although Defendant did not have exclusive access to the bedroom, Defendant stated that he had cleaned out the bedroom prior to moving in, two weeks before the search, and his belongings were both near to, and inside the lockbox. Specifically, Defendant repairs computers, and there were numerous computer components throughout the bedroom. Moreover, a receipt for household appliances, with Defendant's name *and* the address of the residence, was inside the lockbox (which was locked when found by the police, per Detective Nix's testimony in the first trial).[2] A

---

2Defendant suggests that, because the receipt was not in the inventory list for the second amended search warrant, therefore the juries should not have considered it to be a circumstantial link between Defendant and the contents of the lockbox. However, Detective Nix testified that the receipt was found in the lockbox, and that nothing was added to or removed from the lockbox. He explained that the receipt was not listed in inventory because he did not see the receipt upon the first search of the lockbox, and because he did not realize its

jury could reasonably conclude that the most likely explanation for this is that the lockbox belonged to Defendant, particularly given that Defendant also stated that he owned a lockbox. Although Defendant claimed that his lockbox was differently shaped and had no methamphetamine inside, "the jury [was] free to reject [the d]efendant's version of the facts[,]" and no other lockbox was found on the premises. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{13}** Defendant highlights that there were other "personal" papers in the lockbox— namely, identification documents belonging to Kathleen Anaya, and a prescription bottle with a partial label that included the name "Richard W. Coberly." Detective Nix testified that he attempted to make contact with Ms. Anaya, but was unable to reach her. Ms. Anaya was not present during the search, and there appears to be no other evidence connecting her to the residence. Detective Nix testified that he did not try to locate Richard Coberly, but explained that this would have been difficult without additional identifying information for him. While the failure to investigate these individuals gives us pause, we conclude that, under all the circumstances, a jury could reasonably find that the presence of these items did not diminish the connections between Defendant and the contents of the lockbox.[3] *Brietag*, 1989-NMCA-019, ¶ 14. For example, the juries may have concluded that more than one person possessed or accessed the items in the lockbox, or that the items had been stolen. UJI 14-130.

**{14}** In sum, we hold that the receipt connecting Defendant to the residence, the presence of that receipt in a locked container with the paraphernalia and methamphetamine, in a bedroom containing Defendant's personal items, together with Defendant's admission that he owns a lockbox, and stays in the bedroom at issue (which he cleaned out two weeks prior), are adequate facts from which the juries in Defendant's trials could have inferred the requisite knowledge and control, and that sufficient evidence therefore supported Defendant's convictions on the element of possession.

**Expert Testimony from Detective Jones was Properly Admitted**

**{15}** Defendant argues that the district court erred in admitting expert testimony from Detective Jones, who testified (in Defendant's second jury trial) that the evidence against Defendant was more consistent with trafficking than with personal use. Defendant contends that such testimony impermissibly addressed the element of Defendant's guilt or intent.

---

evidentiary significance until he had interviewed witnesses and was more thoroughly examining the lockbox's contents. The juries could reasonably have credited Detective Nix's testimony.

3Detective Nix did not fingerprint any items in the residence, and, though he confirmed that the firearm was not stolen, he did not investigate to whom it was registered. Nor did Detective Nix confirm who was on the lease to the home, though the four individuals present (including Defendant) indicated to Detective Nix that they were the residents of the home. Although we agree with Defendant that Detective Nix's investigation could have been more thorough, "*Brietag* imposes no obligation on the state to account for each item" found in the area of contraband, *State v. Muniz*, 1990-NMCA-105, ¶ 12, 110 N.M. 799, 800 P.2d 734, and there was other, adequate evidence from which the juries could reasonably have concluded that Defendant had knowledge and control over the contents of the lockbox.

**{16}** "[T]he admission of expert testimony or other scientific evidence is peculiarly within the sound discretion of the trial court and will not be reversed absent a showing of abuse of that discretion." *State v. Alberico*, 1993-NMSC-047, ¶ 58, 116 N.M. 156, 861 P.2d 192. An abuse of discretion occurs when a ruling is "obviously erroneous, arbitrary, or unwarranted[,]" *id.* ¶ 63, or "clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153.

**{17}** The admission of expert testimony is governed by Rule 11-702 NMRA, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

This Rule establishes three requirements for the admission of expert testimony: "(1) experts must be qualified; (2) their testimony must assist the trier of fact; and (3) their testimony must be limited to the area of scientific, technical, or other specialized knowledge in which they are qualified." *State v. Torres*, 1999-NMSC-010, ¶ 23, 127 N.M. 20, 976 P.2d 20. The district court must act as a gatekeeper under this rule, to ensure that "speculative or unfounded opinions do not reach the jury." *Parkhill v. Alderman-Cave Milling & Grain Co. of New Mexico*, 2010-NMCA-110, ¶ 12, 149 N.M. 140, 245 P.3d 585.

**{18}** Here, the State offered Detective Jones as an expert in narcotics trafficking—specifically, "as an expert in distinguishing between personal use and trafficking amounts" of controlled substances. Defendant filed a pretrial motion seeking to limit the testimony of Detective Jones on several grounds, and the district court initially granted the motion in part. The district court ruled (citing *State v. Rael-Gallegos*, 2013-NMCA-092, 308 P.3d 1016) that while Mr. Jones would be permitted to testify from his experience and training as a narcotics officer, as to the distinction between trafficking and personal use amounts of narcotics, and the factors he considers in deciding whether to charge an individual with trafficking of narcotics, he would not be permitted to testify as to whether the evidence in Defendant's case was more consistent with trafficking than with personal use of narcotics, nor to offer an opinion relative to Defendant's intent to traffic narcotics.

**{19}** The State then filed a motion for reconsideration, drawing the district court's attention to an unpublished opinion of this Court, *State v. Taylor*, No. 33,951, memo. op. ¶ 15 (N.M. Ct. App. Jan. 11, 2016) (non-precedential), in which we held that testimony from an expert similar to Detective Jones had been properly admitted, where the expert "opined that the evidence obtained in the course of the search was consistent with trafficking rather than personal use." We reasoned that the expert had "explained the basis for [his] opinion," which did not amount to an opinion about the defendant's guilt,

and therefore "the jury was ultimately free to give his testimony whatever weight it saw fit." *Id.* The district court reconsidered its ruling and held that, although *Taylor* is not precedential, the cases on which it and the *Rael-Gallegos* decision rely support the admission of expert testimony addressing whether the evidence presented at trial is more consistent with trafficking or personal use of narcotics.[4] The district court cautioned, however, that Detective Jones would not be permitted to address whether Defendant intended to traffic methamphetamine.

**{20}**  Defendant argues that, following this ruling, Detective Jones improperly offered "an opinion as to the ultimate issue of fact—whether [Defendant] had an intent to [traffic] methamphetamine." We disagree with this characterization. Detective Jones made no comment on Defendant's intent. Detective Jones testified that he had examined the evidence in Defendant's case, and that, in his opinion, the evidence was "more consistent with trafficking than personal use" due to the volume of methamphetamine recovered, and the presence of items like the digital scales. We note the use of the language "consistent with" suggests the evidence in Defendant's case was accordant with, or not in contradiction to, conditions typical of trafficking methamphetamine. *See Consistent*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/consistent (last visited Nov. 13, 2019). It does not mean that the evidence "indicates" or "would be considered" trafficking of methamphetamine. *See Rael-Gallegos*, 2013-NMCA-092, ¶ 29 (citing, as an example of a case in which the officer impermissibly testified directly as to the defendant's intent, *Fluellen v. State*, 703 So.2d 511, 513 (Fla. Dist. Ct. App. 1997), concluding that the trial court erred in permitting an officer to testify that "the quantity of cocaine possessed by the [defendant] indicated that [he] possessed the drug with the intent to sell rather than for personal use")).

**{21}**  This Court's opinion in *Rael-Gallegos* is instructive. In that case, the defendant challenged the testimony of an expert qualified in "differentiating between possession amounts and trafficking amounts of crack cocaine[,]" who had opined about her experience as an officer, and the circumstances under which she concluded that "trafficking was an appropriate charge." 2013-NMCA-092, ¶¶ 25, 32. The defendant argued that the expert "invaded the province of the jury by testifying that someone similarly situated to [the d]efendant should be charged with trafficking." *Id.* ¶ 31

4The district court ruled on Defendant's original motion on the afternoon of December 8, 2016, and asked defense counsel to prepare the form of order. The motion to reconsider was heard on the afternoon of the first day of trial, on December 12, 2016. A written order was first entered only minutes after the motion for reconsideration was argued, but its substance reflects the court's December 8, 2016 ruling, not its revised ruling. Moreover, the written order indicates that it was submitted by defense counsel, states in the preamble that the motion came before the Court on December 8, 2016, and does not mention the motion for reconsideration. Therefore, although "[f]ormal written orders filed of record normally supersede oral rulings, and oral rulings cannot normally be used to contradict written orders[,]" *Enriquez v. Cochran*, 1998-NMCA-157, ¶ 25, 126 N.M. 196, 967 P.2d 1136, in this case, the written order clearly does not incorporate the oral ruling on the State's motion for reconsideration. This is confirmed by the district court's rulings during Detective Jones' testimony at trial on December 14, 2016, in which it reasoned, in response to one of defense counsel's objections, as follows: "*Taylor* clearly gives us an indication that testimony about review of the evidence in a particular case as being consistent with . . . trafficking versus possession is within the bounds."

(omission, internal quotation marks, and citation omitted. We disagreed, reasoning in part that the expert "did not relate" her experience to the defendant's case. *Id.* ¶ 32. We meant this to say that the expert did not improperly attempt to extrapolate whether the defendant intended to distribute cocaine. *Id.* ¶¶ 32-33. Indeed, we held that "[i]n the context of officers testifying as to personal use versus possession of narcotics, the distinction between admissible versus inadmissible expert testimony depends on whether the officer testified directly as to the defendant's intent." *Id.* ¶ 29. This Court also cited favorably *People v. Atencio*, 140 P.3d 73, 74-76 (Colo. App. 2005), a Colorado case holding that "an officer testifying as an expert witness did not invade the province of the jury by stating that the amount of drugs seized from the defendant was consistent with an intent to distribute, because the officer did not testify that the defendant intended to distribute [drugs]." *Rael-Gallegos*, 2013-NMCA-092, ¶ 33.

**{22}** Thus, Detective Jones' testimony that the evidence in Defendant's case was "more consistent with trafficking than personal use," and his explanation for the basis of his opinion, did not impermissibly invade the province of the jury, but allowed the jury to weigh the testimony as it saw fit in determining whether Defendant intended to traffic methamphetamine. Accordingly, the district court did not abuse its discretion in admitting such testimony.[5]

## Conclusion

**{23}** For the reasons set forth above, we hold that sufficient evidence supported the possession element of Defendant's convictions for possession of drug paraphernalia, and trafficking by possession with intent to distribute methamphetamine. We further hold that the district court did not abuse its discretion in admitting the challenged expert testimony of Detective Jones. Accordingly, we affirm.

**{24}   IT IS SO ORDERED.**

---

5We find no support for the dissent's assertion that our district courts generally "struggle" with the admissibility of such testimony. Rather, as in other jurisdictions, our courts routinely admit expert testimony on whether the evidence in a particular case is more consistent with trafficking or with personal use of a drug. *Compare, State v. Hubbard*, 1992-NMCA-014, ¶ 15, 113 N.M. 538, 828 P.2d 971 (holding that "[i]ntent to distribute may be inferred when the amount of controlled substance possessed is inconsistent with personal use" and that a narcotics expert's testimony to that effect was evidence from which a reasonable jury could infer such intent); *State v. Black*, No. A-1-CA-34514, memo. op. ¶¶ 6-8 (N.M. Ct. App. Oct. 3, 2017) (non-precedential) (holding that the district court properly admitted expert testimony that "possession of twenty-eight grams of methamphetamine is consistent with an intent to distribute[,]" and affirming the defendant's conviction); *State v. Benavidez*, No. 32,224, memo. op. at *4 (N.M. Ct. App. Jan. 3, 2013) (non-precedential) (affirming sufficiency of the evidence supporting conviction where, inter alia, an expert testified at trial that the "[eleven] grams of methamphetamine found in two bundles [was] consistent with trafficking"), *with Atencio*, 140 P.3d 73, 74-76 (holding that an expert witness did not invade the province of the jury by stating that the amount of drugs seized from the defendant was consistent with an intent to distribute) (cited favorably, and repeatedly, in *Rael-Gallegos*, 2013-NMCA-092, ¶ 33), *and United States v. Burkley*, 513 F.3d 1183, 1189 (10th Cir. 2008) (holding that the evidence was sufficient to uphold the defendant's conviction where, inter alia, "the jury heard expert testimony that the amount of marijuana in this case was more consistent with possession for distribution than possession for personal use").

**LINDA M. VANZI, Judge**

**I CONCUR:**

**J. MILES HANISEE, Chief Judge**

**ZACHARY A. IVES, Judge (dissenting in part and concurring in part).**

**IVES, Judge (dissenting in part and concurring in part).**

**{25}** I respectfully dissent from the majority's holding that our precedent allows an expert witness to opine that that the evidence in a particular case, considered collectively, is more consistent with possessing drugs for trafficking purposes than with possessing them for personal use. I am compelled to part ways with my esteemed colleagues because my analysis of the question presented differs from theirs and because I believe it is important to clarify New Mexico's confusing and underdeveloped jurisprudence on that question.

**{26}** By issuing a non-precedential opinion, the majority misses an opportunity to clarify the law governing a significant issue that arises frequently in our state's courts: the proper scope of expert opinion testimony offered by the prosecution and the defense to aid the jury in distinguishing trafficking from personal use. Does our law allow such an expert to opine only about what quantities of drugs and other factors generally suggest drug trafficking or possession? Or may an expert go farther, relating those factors to the specific items of evidence in the case being tried by, for example, stating that the amount of drugs seized from the accused is consistent with trafficking or possession? If so, how far may the expert go in relating general indicia to the evidence in a particular case? Turning to the specific question presented by Defendant's appeal, may an expert go so far as to opine that all of the evidence weighed together is "more consistent with trafficking than personal use"?

**{27}** The answers to these questions are important because they impact the evidence that juries will rely on when making often difficult and always consequential decisions about whether people are guilty of trafficking or possession. Opinions on the subject—ordinarily presented by experienced active or retired law enforcement officers recognized as experts—are likely to have a powerful impact on juries, and those juries' decisions will certainly have a powerful impact on communities and accused people in our state. *Compare* § 30-31-20 (providing that drug trafficking offenses are first-degree and second-degree felonies), *with* NMSA 1978, § 30-31-23 (2011, amended 2019) (providing that drug possession offenses range from penalty-assessment misdemeanors to third-degree felonies). In methamphetamine cases like Defendant's, a person convicted of a first trafficking offense may be imprisoned for up to twelve years, but two years is the maximum for a person convicted of a first possession offense. *See* § 30-31-20(B)(1) (classifying a first offense of intentional trafficking of methamphetamine as a second degree felony); § 30-31-23(F) (classifying possession of methamphetamine as a fourth degree felony); NMSA 1978, § 31-18-15(A)(7), (13)

(2016, amended 2019) (providing for a basic sentence of imprisonment of nine years for a second degree felony and eighteen months for a fourth degree felony); NMSA 1978, § 31-18-15.1(A), (G) (2009) (allowing increase in felony sentence of up to one-third of the basic sentence).

**{28}** Although much hinges on whether a jury finds a person guilty of trafficking or possession, New Mexico law is far from clear about the scope of expert testimony that the prosecution may rely on to prove that a person's purpose in possessing drugs was to traffic them and that the defense may rely on to prove that a person's purpose was personal use. To see why it is necessary to clarify, we need look no farther than the district court's struggle with our Court's confusing jurisprudence. Initially, the court relied on *Rael-Gallegos*, 2013-NMCA-092, the only precedential New Mexico case on the topic, which the court interpreted as barring testimony about whether the evidence in Defendant's case was more consistent with trafficking than personal use. But then the court reversed itself on the basis of our non-precedential opinion in *Taylor*, in which we allowed expert testimony to the effect that "the evidence obtained in the course of the search was consistent with trafficking rather than personal use[.]" No. 33,951, mem. op. ¶ 15. The district court's difficulties do not surprise me because, as I read them, *Rael-Gallegos* and *Taylor* draw the line between admissible and inadmissible testimony in different places.

**{29}** In *Rael-Gallegos,* we "acknowledge[d] that there is somewhat of a fine line between (1) testimony *as to typical users and traffickers* based on the amount of drugs in their possession, and (2) testimony as to whether the amounts *in the possession of the subject defendant* indicated a purpose to traffic and not to use." 2013-NMCA-092, ¶ 35 (emphasis added). The testimony at issue was, in essence, that in prior cases the expert had charged people with trafficking based on their possession of certain quantities of crack cocaine and other surrounding circumstances, including the suspects' statements to police and evidence such as money, packaging, phones, and scales. *Id.* ¶ 26. We held that no error had occurred, *id.* ¶¶ 32, 37, stating that "an officer may testify as an expert and offer his or her opinion as to a trafficking amount versus personal use amount of narcotics[,]" *id.* ¶ 30. Importantly, in reasoning that the witness in the case before us had, in effect, done that, *id.* ¶ 32, we observed that the witness "did not relate [the prior] cases to [the d]efendant's case" and "was not asked, nor did she offer, her opinion as to whether [the d]efendant was trafficking cocaine." *Id.* ¶ 32. As I read *Rael-Gallegos*, it allows an expert to opine about the amounts of drugs that are consistent with drug trafficking, as opposed to personal use. However, an expert may not "relate" those general opinions to the evidence in the case being tried by testifying that, in the expert's opinion, a person was trafficking or merely possessing the drugs for his or her own personal use.

**{30}** Our citation to and characterization of *State v. Ogg*, 243 N.W.2d 620 (Iowa 1976), in *Rael-Gallegos* illuminates the line we drew there. We cited *Ogg* as one example of a case in which a court had "held that it is impermissible for an officer, testifying as an expert or otherwise, to state their opinion of the defendant's guilt." *Rael-Gallegos*, 2013-NMCA-092, ¶ 29. In *Ogg*, after the prosecutor asked the officer

"whether the quantity [of LSD the] defendant possessed would be 'more or less than that which would be considered for personal use[,]' " the officer responded that, in his opinion, " '[forty-six] tablets of LSD far exceed[ed] what one might possess for personal use.' " *Ogg*, 243 N.W.2d at 621. On appeal, the Iowa Supreme Court recognized that "a properly qualified witness may testify to the customs and practices of those who use or deal in narcotics," but explained that "the jury must find whether the drug is held for personal use or for delivery" and that "[t]his determination is not to be made by a witness, no matter how expert he is." *Id.* Observing that "possession of drugs is [ordinarily] either for personal use or for delivery to others[,]" the court recognized that the officer's answer in the case before it was "[q]uite obviously . . . intended to convey the idea [that the] defendant was guilty of the latter rather than the former" and that the testimony had "indisput[ably had that] impact." *Id.* The court therefore reversed the defendant's conviction, holding that the officer had "improperly [been] permitted to express an outright opinion as to [the] defendant's guilt on one of the essential elements of the crime." *Id.* Thus, *Ogg* indicates that when an expert opines that evidence in a particular case points more toward trafficking than it does toward possession for personal use, the expert is, in effect, opining that the accused is guilty of trafficking.

**{31}** And yet, despite *Rael-Gallegos*'s reliance on *Ogg*, in *Taylor* we upheld the admission of opinion testimony to the effect that "the evidence obtained in the course of the search was consistent with trafficking rather than personal use[.]"[6] *Taylor*, No. 33,951, mem. op. ¶ 15. We reasoned that the witness had "explained the basis for that opinion, and the jury was ultimately free to give his testimony whatever weight it saw fit." To support that reasoning, we cited *Rael-Gallegos*, parenthetically characterizing it as "observing that the jury was free to accept or to reject analogous expert testimony" without explaining why we viewed the testimony in the two cases as "analogous." *Id.* (internal quotation marks and citation omitted). We did not acknowledge the fine line we drew in *Rael-Gallegos*. Nor did we mention our conclusion in *Rael-Gallegos* that the testimony at issue there fell on the admissible side of that line because the witness did not opine about whether the evidence in the defendant's case was indicative of trafficking. 2013-NMCA-092, ¶¶ 32, 35. Instead, without further discussing *Rael-Gallegos*, we held that the district court had not abused its discretion by admitting the witness's testimony. *Id.* ¶ 34. Because our non-precedential opinion in *Taylor* is at odds with our precedential opinion in *Rael-Gallegos*, I find *Taylor* unpersuasive and am compelled to adhere to *Rael-Gallegos*.

**{32}** And, under my reading of *Rael-Gallegos*, the district court erred in Defendant's case. Detective Jones testified that he had reviewed "the evidence *in this case*," and that, in his expert opinion, that evidence "would be *more* consistent with trafficking than personal use."[7] Then, when the prosecutor asked about the basis for this opinion, Detective Jones testified that "[t]he evidence *in this case*"—comprising "scales" and the "amount of [methamphetamine] present"—"*outweigh*[ed] . . . the actual use of [methamphetamine,]" use evidenced by Defendant's possession of "tools of drug use." This opinion testimony, like the testimony in *Ogg*, was "intended to convey the idea

---

6We used the quoted language to characterize the testimony, which does not appear verbatim in our opinion.

7All emphases in Detective Jones's testimony have been added.

[D]efendant was guilty of [trafficking] rather than [possession for personal use,]" and it indisputably had that impact. 243 N.W.2d at 621. By testifying that the evidence in Defendant's case is "*more* consistent with trafficking than personal use[,]" Detective Jones made clear that—in his expert opinion, after weighing all of the evidence—that evidence "indicated a purpose to traffic and not to use[,]" 2013-NMCA-092, ¶ 35, crossing the fine line we recognized in *Rael-Gallegos*.[8]

**{33}**    In my view, the erroneous admission of this expert testimony is not harmless because there is a reasonable probability that it contributed to Defendant's trafficking conviction. *See State v. Trujillo*, 2012-NMCA-112, ¶ 51, 289 P.3d 238 ("An error is harmful when, looking at the totality of the circumstances, there is a reasonable probability that impermissible evidence contributed to a defendant's conviction." (alteration, omission, internal quotation marks, and citation omitted)). Detective Jones's testimony—which weighed the evidence for the jury—was at the heart of the State's trafficking case and likely had a powerful impact on the outcome. Because I agree with the majority that the evidence, including the improperly admitted expert testimony, is sufficient to support Defendant's convictions, I would affirm his paraphernalia conviction but reverse his trafficking conviction and remand for a new trial on the trafficking charge.

**{34}**    Although I disagree with the majority's analysis and holding, I think it is unfortunate that the majority has chosen to issue another non-precedential opinion on this subject, leaving a blurry line between admissible and inadmissible expert testimony. Wherever the line is, we should draw it clearly. Without a clarifying precedential opinion, district court judges and lawyers must continue to divine meaning from *Rael-Gallegos* and our non-binding opinions. My view is that we should acknowledge the tensions in our jurisprudence on the question presented and provide a definitive answer. Such an answer would benefit district courts, which are often forced to make decisions without the luxury of time to ponder difficult legal questions. Such an answer would also promote consistency, making it less likely that the prosecution and defense will receive a different answer from one judge than they receive from another. The majority's approach requires judges and lawyers to spend valuable time repeatedly litigating an issue that our Court could resolve for them in a single appeal—this one. I believe that

---

8Relying on the dictionary definition of "consistent," the majority reasons that that word as it was used in Detective Jones's testimony means not "that the evidence 'indicates' or 'would be considered' trafficking of methamphetamine[,]" but rather "suggests the evidence in Defendant's case was accordant with, or not in contradiction to, conditions typical of trafficking methamphetamine." Maj. Op. ¶ 19. Even assuming that it would be permissible for an expert to testify that the evidence in a particular drug trafficking case is "accordant with, or not in contradiction to, conditions typical of trafficking [,]" I disagree that that is what took place in this case. Detective Jones testified that, in his opinion, the evidence in Defendant's trial was "more consistent with trafficking than personal use" (emphasis added). "More," when used in this context, means "to a greater or higher degree." *More, Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/more (last visited Nov. 8, 2019). Detective Jones's testimony, in my view, thus went farther than expressing an opinion that the evidence in Defendant's case was "accordant with" trafficking by communicating to the jury his opinion that the evidence was accordant "to a greater or higher degree" with trafficking than with personal use—i.e. that the evidence more likely reflected trafficking than personal use. I disagree with the majority's conclusion that this is not equivalent to testimony that "the evidence 'indicates' or 'would be considered' trafficking," testimony that I believe to be outside of the scope of permissible expert testimony under *Rael-Gallegos*.

issuing a non-precedential opinion in this particular case clouds the law, rather than clarifying it, and decreases, rather than increases, the overall efficiency of our system.

**ZACHARY A. IVES, Judge**